Dow Jones & Company, Inc. & another *vs.* Superior Court & another.

Suffolk.    October 1, 1973. — November 20, 1973.

Present:    Tauro, C.J., Quirico, Braucher, Kaplan, & Wilkins, JJ.

*Newsman. Evidence,* Privileged communication. *Discovery.*

In an action for libel based on remarks about the plaintiff by an unidentified town "official" which the defendant reporter quoted in an article in the defendant newspaper, the trial judge correctly issued an interlocutory order that the reporter answer the questions put to her during an oral deposition taken by the plaintiff relating to the identity of, or the precise office held by, the town "official"; there was no newsman's privilege under the First Amendment of the Federal Constitution, qualified or absolute, and a contention that the order should have been deferred until it had been demonstrated that the concealed information was crucial to the libel action was without merit. [319-325]

Petition filed in the Supreme Judicial Court for the county of Suffolk on July 25, 1973.

The case was reserved and reported by *Wilkins, J.*

*Raymond J. Kenney, Jr.* (*Robert D. Sack* of New York with him) for the petitioners.

*David M. Davis* (*Roger S. Davis* with him) for the respondents.

Tauro, C.J.    This case is before us pursuant to G. L. c. 211, § 4A, as appearing in St. 1972, c. 740, § 2, for determination of a single issue of law. The petitioners here, Dow Jones & Company, Inc. (Dow Jones), and Liz Roman Gallese (Gallese), are the defendants in a tort action for libel brought in the Superior Court by one of the present respondents, William D'Annolfo (D'Annolfo). The only issue now before us is the correctness of an interlocutory order compelling discovery issued by a Superior Court judge in

that tort action. The matter was heard, reserved and reported to us without decision by a single justice of this court upon the pleadings, a statement of agreed facts (together with certain documents incorporated by reference in that statement) and the transcript of the deposition of the petitioner Gallese.

The pertinent facts are briefly summarized. Gallese is a reporter for The Wall Street Journal (the Journal), a publication of Dow Jones. On October 17, 1972, the Journal published an article written by Gallese concerning the practical effects in Massachusetts towns of the so called "anti-snob zoning law."[1] In connection with the principal article a shorter article, also written by Gallese, was printed in a "box" on the bottom of the front page in the same issue. This second article focused on the possibility that the anti-snob zoning law might be used by some developers to "blackmail" town officials by threatening to build low cost housing if approval is not given for conventional development projects. Included in this article was a brief description of a situation in the town of Stoneham in which a developer who reportedly had previously been denied permission to build luxury apartments was currently attempting to have the same site rezoned for low cost housing. An unnamed "Stoneham official" was quoted as stating that William D'Annolfo, the developer, was a "bad word" in Stoneham and that D'Annolfo was in fact using the law to "blackmail" the town officials. The article closed with a paraphrased denial of those charges attributed to "a lawyer for Mr. D'Annolfo."[2] In a subsequent edition of the Journal

---

[1] G. L. c. 40B, §§ 20-23, inserted by St. 1969, c. 774, § 1.

[2] The pertinent paragraphs from the article are:

"In Stoneham, a middle-class town north of Boston, a local developer pleaded with the town a few years ago to rezone a parcel of land for luxury apartments. The town refused. Today the same developer is asking the town to rezone the same site for low-cost housing.

" 'William D'Annolfo (the developer) is a bad word in town,' says one Stoneham official. 'He's saying, "You wouldn't let me put in luxury apartments. Now we'll get you." The law is being used to blackmail us.'

"But a lawyer for Mr. D'Annolfo denies these charges. Such rumors are apt to pop up when dealing with issues as hot as low-cost housing, he says."

(December 22, 1972), a "correction" was printed in which it was stated that the earlier report that D'Annolfo had applied for a zoning change to permit construction of luxury apartments was incorrect. D'Annolfo had in fact applied to build a nursing and convalescent home. The Journal concluded, therefore, that "the inference of 'blackmail' was incorrect," and stated that it regretted the error.

Early in 1973 D'Annolfo instituted the present tort action against the petitioners. On May 30 counsel for D'Annolfo, pursuant to S.J.C. Rule 3:15, 351 Mass. 798 (1967), took an oral deposition of the petitioner Gallese. During the course of that deposition Gallese refused to answer several questions relating to the identity of or the precise office held by the "Stoneham official" whom she had quoted in her article. D'Annolfo thereupon filed a motion in the Superior Court for an order compelling answers under Rule 3:15, § 8. After argument, a Superior Court judge ordered Gallese to answer all the questions which she had refused to answer during the deposition. The petitioners first moved in the Superior Court to quash the order compelling discovery, which motion was continued without action pending disposition of the present petition to this court under G. L. c. 211, § 4A.

The issue before us is the correctness of the lower court judge's order compelling the petitioner Gallese to identify the source of the allegedly defamatory statements which she quoted in a published news article.

It is not questioned that the order is authorized by the terms of Rule 3:15.[3] Nor, apparently, is there any question that at least at some stage in a libel action such as this one the trial judge may properly issue an order compelling disclosure of the source of the allegedly libellous statement. The peti-

---

[3] Rule 3:15 provides that a party may take the testimony of any person, including a party, "for the purpose of discovery or for use as evidence or for both purposes." § 1 (a). The deponent may be examined as to any subject matter relevant to the action, and testimony which would be inadmissible at trial may nevertheless be required if it is likely to lead to discovery of admissible evidence. § 1 (b). Upon application of the person taking the deposition, the court may grant a motion for an order compelling an answer. § 8 (a). Refusal to comply with such an order may be considered a contempt of court. § 8 (b) (1).

tioners contend, however, that such a stage has not yet been reached in this case. They argue that the free press guaranty of the First Amendment to the Constitution of the United States, while not creating an absolute privilege, at least creates a partial shield behind which journalists may conceal their confidential sources even from the fact-finding procedures which are integral to the judicial process. That shield must stand, it is argued, unless and until it has been demonstrated that the information concealed by it is crucial to a particular judicial proceeding. Thus, in the present case, the petitioners would have us require postponement of the discovery order until the plaintiff below has completed discovery, has exhausted alternative means of acquiring the desired information, and has demonstrated that he can and will succeed only if the identity of the anonymous "Stoneham official" is revealed. In short, we are asked to rule that journalists have a qualified privilege to refuse to reveal confidential information which is admittedly relevant to a court proceeding. We adhere to our prior holding that the First Amendment imports no such privilege, qualified or absolute. See *Matter of Pappas,* 358 Mass. 604 (1971), affd. sub nom. *Branzburg* v. *Hayes,* 408 U. S. 665 (1972).

The opinion of this court in the *Pappas* case, *supra,* contains a thorough analysis of the question of a newsman's privilege under the First Amendment. It is true, of course, that the *Pappas* case involved a grand jury proceeding, not a civil suit. It is also true that the majority of the Supreme Court in the *Branzburg* decision, *supra,* emphasized that the sole issue before them was "the obligation of reporters to respond to grand jury subpoenas," 408 U. S. at 682 (1972), and thus in reaching their decision stressed the importance of the grand jury in the criminal investigation system. The basis for the decision in the *Pappas* case, however, was not so restricted. While the *Branzburg* decision stressed the importance of the complete disclosure of all relevant information to the *criminal* process, the *Pappas* decision stressed its importance to the *judicial* process. Thus, the conclusion of this court in the *Pappas* opinion applies here as well: "there

exists no constitutional newsman's privilege, either qualified or absolute, to refuse to appear and testify before a court or grand jury. The obligation of newsmen, we think, is that of every citizen, viz. to appear when summoned, with relevant written or other material when required, and to answer relevant and reasonable inquiries."[4] 358 Mass. at 612 (1971). We adhere to both the reasoning and the conclusion of the *Pappas* decision.

The petitioners have cited several cases which, they contend, support their argument for at least a qualified privilege requiring reversal, or at least postponement, of the lower court judge's order compelling discovery. The two cases principally relied on are decisions by United States Courts of Appeals, *Baker* v. *F & F Inv.* 470 F. 2d 778 (2d Cir. 1972), cert. den. 411 U. S. 966 (1973), and *Cervantes* v. *Time, Inc.* 464 F. 2d 986 (8th Cir. 1972), cert. den. 409 U. S. 1125 (1973). Each may be distinguished from the present case in several respects.

The *Baker* case involved an interlocutory appeal of a trial court judge's ruling on a motion to compel a journalist to disclose confidential news sources. The journalist was not a party to the case (a class action alleging racial discrimination in the sale of houses), but in a magazine article written approximately ten years earlier he had reported on the activities of a pseudonymous "block-buster" whose identity the plaintiffs then wanted to learn. The trial judge refused to order the journalist to disclose the identity of his source. In affirming that ruling, the Court of Appeals noted that the journalist was not a party to the underlying action (470 F. 2d at 783 [1972]) and that the plaintiffs had failed to make any showing that the identity of the source was necessary to their case (at 784). In addition, the court was influenced by the

---

[4]Although the petitioner Gallese has not yet been called to testify "before a court," we perceive no reason to distinguish pre-trial discovery proceedings from the trial itself for purposes of the testimony which may be required from journalists. Discovery proceedings are subject to the supervision of the court, and Rule 3:15 makes ample provision for orders protecting newsmen as well as any other deponent from "annoyance, undue expense, embarrassment, or oppression." § 4 (b).

fact that both Illinois and New York[5] had enacted legislation protecting journalists from forced disclosure of their sources (at 781-782). Finally, the court emphasized that a ruling on a discovery motion is discretionary and thus will be reversed only on a showing of abuse of discretion (at 781).

The case now before us is quite different from the situation in the *Baker* case. The deponent here is a party to the underlying action, and the information which she desires to keep confidential relates to the factual issue which is central to the plaintiff's case. The Massachusetts Legislature has not enacted a "shield law" protecting reporters' sources. And the ruling of the lower court judge at issue on this report, unlike that in the *Baker* case, is an order that the petitioner Gallese must testify. If we are to be guided by the *Baker* decision, as the petitioners suggest, then we can reverse that order only if we find that it constituted an abuse of discretion. We find no such abuse in this case.

We intend no implication by what we have just said that, in some future case, it would be within the trial judge's "discretion" to determine that a qualified newsman's privilege exists which permits at least some protection of a journalist's confidential sources. We have this day reaffirmed that no such privilege exists. This does not mean, however, that courts are without power to exercise their discretion to protect newsmen from unnecessary harassment or frivolous inquiries. As we said in the *Pappas* opinion, 358 Mass. 604 (1971): "Such appearances [of newsmen], however, like those of other citizens, are subject to supervision by the presiding judge to prevent oppressive, unnecessary, irrelevant, and other improper inquiry" (p. 612). See *Branzburg* v. *Hayes, supra,* 408 U. S. at 707-708 (1972).

The second case on which the petitioners place primary reliance, *Cervantes* v. *Time, Inc.* 464 F. 2d 986 (8th Cir. 1972), came before the Court of Appeals in a procedural

---

[5]The laws of both States were relevant because the underlying class action was pending in the District Court for the Northern District of Illinois while the discovery motion was heard in the District Court for the Southern District of New York.

context quite different from the present one. The *Cervantes* case was a diversity libel action brought by the then mayor of St. Louis, Missouri, against the corporate owner of Life magazine. During extensive pre-trial discovery conducted by the plaintiff the reporter who wrote the allegedly defamatory article was deposed but refused to reveal the identity of his informants within the United States Department of Justice. When the plaintiff moved for an order to compel discovery, the defendant countered with a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U. S. C. Appendix (1970). The lower court judge granted the motion for summary judgment and did not reach the merits of the discovery motion. 464 F. 2d at 990 (1972). On appeal, therefore, the issue of whether the reporter should have been compelled to disclose his sources was considered only as it pertained to the propriety of the order for summary judgment. The Court of Appeals considered the strict constitutional standards of proof that the plaintiff was required to meet in order to sustain a libel action (see *New York Times Co.* v. *Sullivan,* 376 U. S. 254 [1964]),[6] and decided that the plaintiff had not satisfied the requirement of Rule 56 (e) that a summary judgment motion be opposed by a demonstration of "specific facts showing that there is a genuine issue for trial." 464 F. 2d at 993 (1972). In a libel action governed by the standards of the *New York Times* case the showing required by Rule 56 (e) could be satisfied either by "substantial evidence" that the published assertions are "so inherently improbable" as to cast doubt on the veracity of the informant, or by "some factor" indicating that the defendant in fact had serious doubt as to the truth of the published assertions (p. 994). "Mere speculation" about the probative value of the identity of the news source is not sufficient. The

---

[6]Although it appears from the record before us that the standards of the *New York Times* case may be applicable to this case (see *Curtis Publishing Co.* v. *Butts,* 388 U. S. 130 [1967]; *Rosenbloom* v. *Metromedia, Inc.* 403 U. S. 29 [1971]; *Priestly* v. *Hastings & Sons Publishing Co. of Lynn,* 360 Mass. 118 [1971], our decision on the present discovery issue does not depend upon that fact. The identity of the source of the allegedly libellous statement in the Journal article is relevant, and we hold that the order compelling discovery must be obeyed regardless of the standard of proof which will eventually be required in this case.

court concluded that the trial judge's refusal to require disclosure of the identity of the reporter's Department of Justice sources was not reversible error (*id.* at 994-995).

The case now before us has not been decided on the merits. Because our procedural system has no provision comparable to Rule 56 of the Federal Rules of Civil Procedure (compare G. L. c. 231, §§ 59, 59B), we need not decide what type of evidentiary showing the plaintiffs in a libel suit would have to make to defeat a defence motion for summary judgment. The only question which is presented for our consideration is the propriety of the order compelling discovery. We refuse to extrapolate from the *Cervantes* decision a requirement that, because in libel actions under Federal procedures it is possible to obtain a judgment on the merits before the discovery issue is ruled on, therefore in libel actions in our courts discovery of a newsman's sources cannot be ordered without a preliminary evaluation of the probable result on the merits. The procedural setting of the *Cervantes* decision makes it inapposite to the present case.[7]

Finally, we note that the Court of Appeals in the *Cervantes* opinion acknowledged that "[t]he weight of decisional authority" holds that newsmen do not have a First Amendment privilege to withhold news sources. 464 F. 2d at 992, n. 9 (1972). The majority of the United States Supreme Court in the Branzburg case, 408 U. S. at 685-686 (1972), drew a similar conclusion from their review of the then existing precedents: "In 1958, a news gatherer asserted for the first time that the First Amendment exempted confidential information from public disclosure pursuant to a subpoena issued in a civil suit, *Garland* v. *Torre,* 259 F. 2d 545 (CA2), cert. denied 358 U. S. 910 (1958), but the claim was denied, and this argument has been almost uniformly rejected since then, although there are occasional dicta that, in cir-

---

[7]Two other cases cited by the petitioners, *Cerrito* v. *Time, Inc.* 302 F. Supp. 1071 (N. D. Cal. 1969), affd. 449 F. 2d 306 (9th Cir. 1971), and *Schwartz* v. *Time, Inc.* 71 Misc. 2d (N. Y.) 769 (1972), also were decided on motions for summary judgment and thus may be distinguished on the same basis as the *Cervantes* case.

364 Mass. 325                                                                325

Stop & Shop Cos., Inc. *v*. Gilbane Bldg. Co.

cumstances not presented here, a newsman might be excused. [Citations omitted]."

There is no need here for an extensive review of those precedents. The United States Supreme Court found that this court's opinion in *Matter of Pappas,* 358 Mass. 604 (1971), is "typical of the prevailing view" that a newsman has the same obligation as other citizens to "appear before a grand jury or at trial, pursuant to a subpoena, and give what information he possesses." 408 U. S. at 686 (1972). We believe that the *Pappas* opinion still represents the correct view, and we therefore hold that the order of the Superior Court was correct.

*Order of the Superior Court affirmed.*