ROBERT J. CRONIN & another[1] vs. LUTHER M. STRAYER, THIRD.

Barnstable. February 6, 1984. — July 17, 1984.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Discovery. Practice, Civil,* Discovery, Appeal. *Physician,* Impaired or disabled physician. *Massachusetts Medical Association. Privileged Communication. Witness,* Privilege.

The Massachusetts Medical Society and a committee thereof could not properly appeal from a judge's denial of their motion under Mass. R. Civ. P. 26 (c) to quash certain subpoenae duces tecum which had been served on them as part of the discovery process in a civil action to which neither was a party. [528-530]

This court expressed the view that reports, minutes, and other documents generated by the Impaired Physician Committee of the Massachusetts Medical Society as the result of a complaint against a physician were not privileged communications and were subject to discovery in a civil action by that physician against another physician who had initiated the complaint. [530-533]

For purposes of discovery by a party to a civil action, a judge properly treated as relevant certain documents in the possession of a nonparty without making specific findings on the issue of relevancy. [533-534]

A physician did not, by reason of his membership in the Massachusetts Medical Society, voluntarily agree to be bound by the society's policy not to disclose the proceedings of its Impaired Physician Committee. [535]

CIVIL ACTION commenced in the Superior Court Department on March 4, 1983.

An application for a protective order as to the scope of discovery was heard by *Morse, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Edwin J. Carr (Walter L. Landergan & Stephen M. Kane* with him) for Massachusetts Medical Society & another.

*Samuel Adams (Michael L. Blau* with him) for the plaintiffs.

---

[1] Gail L. Cronin.

ABRAMS, J.   The plaintiffs brought this action seeking damages for defamation, intentional infliction of emotional distress, unfair trade practices, interference with contractual relations, and violation of the plaintiff Robert J. Cronin's civil rights. One of the claims is that the defendant defamed the plaintiff Robert J. Cronin by falsely writing to the Impaired Physician Committee (I.P.C.) of the Massachusetts Medical Society (society) that Dr. Cronin was an impaired physician.[2] As part of the discovery proceedings, the plaintiffs served deposition subpoenae duces tecum on the society and on Charles H. Montgomery, a member of the I.P.C.[3] The subpoenae sought a letter from the defendant to the I.P.C.,[4] the records of the I.P.C. investigation, and documents[5] concerning the investigation of the plaintiff made by the I.P.C. at the request of the defendant. Pursuant to Mass. R. Civ. P. 26 (c), 365 Mass. 772 (1974), and 45 (b), 365 Mass. 809 (1974), the society and the I.P.C., through its chairman, moved to quash the subpoenae on the grounds that the documents were privileged and confidential. After a hearing, a judge of the Superior Court denied the request for a protective order and declined to report his decision. The society and the I.P.C. appeal from the judge's order declin-

---

[2] A physician who abuses alcohol or drugs.

[3] Dr. Montgomery was the member of the I.P.C. who made "discreet inquiries" into Dr. Strayer's allegations.

[4] Dr. Strayer provided Dr. Cronin with a copy of his letter to the I.P.C. He is not before us as an appellant.

[5] The plaintiffs sought "[a]ll documents of any nature whatsoever sent by Dr. Luther M. Strayer, III, or received or prepared by the Committee on the Impaired Physician (the "IPC") of the Massachusetts Medical Society (or any member, agent or employee of said Society) relating in any way to Dr. Robert J. Cronin; said documents to include, but not be limited to, all correspondence and other documents received by the IPC from Dr. Strayer or any other person concerning Dr. Cronin, all notes or other documents memorializing any investigation conducted by the IPC concerning Dr. Cronin, all minutes of IPC meetings at which Dr. Cronin was discussed, all correspondence or other documents concerning Dr. Cronin sent by the IPC to any person, and a list of all persons contacted by the IPC when investigating any matter concerning Dr. Cronin together with said persons' address and telephone number and any notes of conversations with such persons."

ing to quash the subpoenae. We granted the society's and Dr. Montgomery's application for direct appellate review. The plaintiffs ask us to dismiss the appeal because discovery orders are interlocutory and therefore not appealable. We agree. Thus, this appeal is not properly before us. We think, however, that we should express our views. *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). We believe that there was no error in the judge's denial of the society's motion to quash the subpoenae.

We summarize the procedural background. The plaintiff Robert J. Cronin and the defendant are licensed physicians, specializing in the practice of orthopaedic surgery and are members in good standing of the medical staff of Cape Cod Hospital. The plaintiff joined the hospital staff in 1979; the defendant joined approximately ten years earlier. The complaint alleges a number of acts of the defendant not here relevant and also alleges that, in the spring or summer of 1982, the defendant wrote the I.P.C. "falsely charging that Dr. Cronin's ability to practice medicine is impaired by the use of drugs and/or alcohol."

After investigation, on July 16, 1982, the I.P.C. declined to make a "judgment on the case per se." The I.P.C. stated that "at this point [the case] is best investigated on a local level; and should our services be needed in the future, consultation or referral back to us would be welcome."

On October 7, 1982, the Cape Cod Hospital through its chief of staff informed Dr. Cronin that its investigation on other charges against him commenced as a result of a request by the defendant was closed. On March 4, 1983, the plaintiffs filed their complaint, and on the same day, the plaintiffs notified the defendant that the custodian of records of the society and Dr. Charles H. Montgomery of the I.P.C. would be deposed on April 7, 1983.

The society and Dr. Montgomery applied for a protective order. The affidavit accompanying the application disclosed that the society is a voluntary association of physicians, and that it is regulated by its own by-laws, rules, and procedures. The affidavit states that in 1978, the society established the

I.P.C. "to deal with matters relating to impaired or disabled physicians." In order to encourage referrals, the I.P.C. adopted a policy of strict confidentiality. "[W]ritten referrals to the Committee and information developed by the Committee in the course of its work are kept confidential and are not exhibited to or provided to third persons." The I.P.C. "believe[s] that only by assuring the confidentiality of information provided to it and maintaining the anonymity of persons cooperating with the Committee can it promote the trust and reliance which is essential to the Committee's work." Accordingly, the society and the chairman of the I.P.C. ask that the "[s]ubpoenae be quashed and that their respective depositions . . . not be had."

The judge denied the society's motion. In his memorandum and order, the judge noted that "G. L. c. 231, § 85N does grant such Committees immunity from liability for good faith actions." But the judge concluded that the statute does not "grant either the defendant . . . or the Committee immunity from discovery." The judge further noted that "[t]he Board of Registration of [*sic*] Medicine has a similar function to that of the [I.P.C.]," and that Board of Registration in Medicine complaints and complaint files are public records, subject to exceptions not here applicable. See 243 Code Mass. Regs. § 1.02 8 (a) (1) (1979). The judge ordered that discovery or information obtained as a result of discovery not be disclosed to persons other than the parties of their counsel or except in the course of further judicial proceedings in the case. The judge expressly left open the question of the admissibility of evidence obtained as a result of this discovery.

*Ripeness of the appeal.* The appellants do not challenge the general rule that the discovery orders are interlocutory and not appealable. See *Borman* v. *Borman,* 378 Mass. 775, 781-782 (1979). See also *Beit* v. *Probate & Family Court Dep't,* 385 Mass. 854, 858 (1982). Rather, they argue that, because this appeal is brought by two nonparty witnesses and involves a matter of substantial concern, the rule should not apply. They acknowledge that a "non-party witness can obtain appellate review of an order compelling discovery by disobeying such order and appealing from the subsequent contempt order." See, e.g., *Matter of Roche,* 381 Mass. 624, 625 n.1 (1980).

The appellants assert that we should permit this appeal because no legitimate purpose is served by requiring witnesses to invite contempt in order to obtain appellate review. We do not agree. "'Orders compelling the testimony of witnesses are among the most common of everyday incidents to the process of disposing of cases, and objections on the ground of privilege . . . are frequently raised,' . . . 4 Moore's Federal Practice par. 26.83 [6], at 26-599 (2d ed. 1979)," *Borman* v. *Borman,* 378 Mass. 775, 784 (1979), and therefore "acceptance of [the appellants'] position would open the door to countless appeals from orders heretofore uniformly deemed interlocutory, thereby swelling appellate dockets already too large and delaying trial calendars already too slow," *United States* v. *Fried,* 386 F.2d 691, 695 (2d Cir. 1967). "To accept the [appellants'] view is to invite the inundation of appellate dockets with what have heretofore been regarded as nonappealable matters. It would constitute the courts of appeals as second-stage motion courts reviewing pretrial applications of all non-party witnesses alleging some damage because of the litigation." *Borden Co.* v. *Sylk,* 410 F.2d 843, 846 (3d Cir. 1969). See, e.g., *Honig* v. *E.I. duPont de Nemours & Co.,* 404 F.2d 410 (5th Cir. 1968); *United States* v. *Fried, supra.* But see *Covey Oil Co.* v. *Continental Oil Co.,* 340 F.2d 993 (10th Cir.), cert. denied, 380 U.S. 964 (1965).[6]

Moreover, "[c]onfining the right to get appellate review of discovery orders to cases where the party [or witness] against whom the order was directed cared enough to incur a sanction for contempt is a crude but serviceable method . . . of identifying the most burdensome discovery orders and in effect waiving the finality requirement for them." *Marrese* v. *American Academy*

---

[6] The Federal statute and its underlying policies are so strongly enforced in the Federal courts that a reporter and a newspaper relying on the First Amendment to the United States Constitution have been denied relief by two Justices of the United States Supreme Court. See *New York Times Co.* v. *Jascalevich,* 439 U.S. 1304 (1978) (Marshall, J.); *New York Times Co.* v. *Jascalevich,* 439 U.S. 1301 (1978) (White, J.). See also *Seattle Times Co.* v. *Rhinehart,* 467 U.S. 20, 36 n.23 (1984).

*of Orthopaedic Surgeons,* 726 F.2d 1150, 1158 (7th Cir. 1984). See *United States* v. *Arthur Andersen & Co.,* 623 F.2d 720, 724 (1st Cir.), cert. denied, 449 U.S. 1021 (1980) ("Well established doctrine regarding the appealability of interlocutory orders suggests that the burden of incurring a contempt citation is not an unreasonable one to impose on a party [or a witness] seeking review of a question that will otherwise become moot"). "The remedy . . . of the non-party witness is to refuse to answer and subject himself to civil or criminal contempt." *Kaufman* v. *Edelstein,* 539 F.2d 811, 814 (2d Cir. 1976). Because the policy of not reviewing interlocutory matters "stems from the burdensome nature of piecemeal appellate review," *Cappadona* v. *Riverside 400 Function Room, Inc.,* 372 Mass. 167, 169 (1977), we decline to adopt a construction of our rules which would permit nonparty witnesses to appeal discovery orders. The appeal is dismissed.[7]

*The claim of privilege.* The appellants ask that we weigh "the clear public need for candid, vigorous and effective peer review against the need for pre-trial discovery" and conclude that the records and documents of the I.P.C. should be kept confidential. The issue is whether any reports, minutes, or other documents generated by the I.P.C. as a result of the defendant's complaint are discoverable. The principal case in

---

[7] Very few inroads have been made on the general rule that pretrial disclosure orders are not appealable. In *United States* v. *Nixon,* 418 U.S. 683 (1974), the Supreme Court held that the President of the United States could appeal the denial of a motion to quash a subpoena because "[it] would present an unnecessary occasion for constitutional confrontation between two branches of the Government." *Id.* at 692. The exception afforded the President of the United States has not been extended. See *In re Attorney Gen. of the U.S.,* 596 F.2d 58 (2d Cir.), cert. denied sub nom. *Socialist Workers Party* v. *Attorney Gen. of the U.S.,* 444 U.S. 903 (1979). In any event, the society is not a governmental agency, and thus there is no confrontation problem.

The most common exception arises in cases where a person has custody of material as to which another person has a privilege of nondisclosure. In those limited circumstances, the courts have permitted the person who asserts the privilege of nondisclosure to appeal the disclosure order without awaiting the outcome of the litigation. *Perlman* v. *United States,* 247 U.S. 7 (1918). See *Borman* v. *Borman,* 378 Mass. 775, 781-784 (1979).

support of the appellants' position is *Bredice* v. *Doctors Hosp.,
Inc.,* 50 F.R.D. 249 (D.D.C. 1970), aff'd 479 F.2d 920 (D.C.
Cir. 1973). In *Bredice,* the Federal District Court judge created
a qualified privilege for the minutes and reports of the medical
staff committee of a hospital which had investigated allegations
of malpractice against a member of the staff. The judge first
stated that "committee work [was] performed with the under-
standing that all communications originating therein [were]
. . . confidential." *Id.* at 250. Any disclosure of that informa-
tion would have violated the committee members' expectation
of confidentiality. More importantly, the judge opined that
"[c]onfidentiality is essential to effective functioning of these
staff meetings . . . . Constructive professional criticism cannot
occur in an atmosphere of apprehension that one doctor's sug-
gestion will be used as a denunciation of a colleague's conduct
in a malpractice suit. . . . As doctors have a responsibility for
life and death decisions . . . [t]here is an overwhelming public
interest in having those staff meetings held on a confidential
basis so that the flow of ideas and advice can continue unim-
peded." *Id.* at 250-251. The chilling effect which disclosure
of the committee's reports may have upon the candor and,
therefore the efficacy of peer review is the chief rationale for
the nondisclosure of review committee documents. The qual-
ified privilege could be overcome by a showing of "extraordi-
nary circumstances." *Id.* at 251.[8]

We find more persuasive the reasoning that "the true effi-
ciency of such committees may be fostered by an atmosphere
of openness, in that they may be less likely to rely on hearsay
or information tainted by bias or prejudice in making their
decisions, if the underlying reasons therefor can be required
to be disclosed in a proper case. Although perhaps there is
some merit in the hospital's contention that incompetent physi-
cians may be more easily excluded or removed from staffs if

---

[8] Courts following *Bredice* have concluded that statements made to review
committees in the course of the committee's investigative work are not
within the scope of the privilege. See *Gillman* v. *United States,* 53 F.R.D.
316 (S.D.N.Y. 1971); *Tucson Medical Center, Inc.* v. *Misevch,* 113 Ariz.
34, 37-38 (1976).

the privilege is recognized, it may also be that a potential Pasteur, Lister or Semmelweis, who advocates salutary changes in procedures may be excluded simply because he 'makes waves,' if the proceedings are shrouded from public perusal. It is also important to assure that the decisions of such peer review committees are not made on improper considerations such as those of race or sex." *Ott* v. *St. Luke Hosp. of Campbell County, Inc.,* 522 F. Supp. 706, 711 (E.D. Ky. 1981). Thus, in the absence of a statute, courts have been reluctant to create such a privilege. See, e.g., *Memorial Hosp. for McHenry County* v. *Shadur,* 664 F.2d 1058 (7th Cir. 1981); *Ott* v. *St. Luke Hosp. of Campbell County, Inc., supra* at 708; *Wesley Medical Center* v. *Clark,* 234 Kan. 13 (1983); *Davison* v. *St. Paul Fire & Marine Ins. Co.,* 75 Wis. 2d 190 (1977); *Nazareth Literary & Benevolent Inst.* v. *Stephenson,* 503 S.W.2d 177 (Ky. Ct. App. 1973).[9]

Further, "[i]n Massachusetts, the area of privileges concerning confidential communications is limited. . . . The principle that the public 'has a right to every man's evidence' (Wigmore, Evidence [McNaughton rev.] §§ 2192, 2285 [1961]) has been preferred, on the whole, to countervailing interests. Privileges are exceptional." *Matter of Pappas,* 358 Mass. 604, 607 (1971), aff'd sub nom. *Branzburg* v. *Hayes,* 408 U.S. 665 (1972). See *Three Juveniles* v. *Commonwealth,* 390 Mass. 357, 359 (1983); *Commonwealth* v. *Corsetti,* 387 Mass. 1, 5 (1982); *Dow Jones & Co.* v. *Superior Court,* 364 Mass. 317, 320-321 (1973). In *Pappas,* we said that "[s]o serious an interference with a rational inquiry can be justified only by accompanying social benefits of high worth. It may be conceded

---

[9] Courts in other jurisdictions have concluded that statutes which exempt peer review committee proceedings from some or all aspects of discovery should be enforced by trial judges, see, e.g., *Morse* v. *Gerity,* 520 F. Supp. 470 (D. Conn. 1981); *Lipschultz* v. *Superior Court,* 128 Ariz. 16 (1981); *Franco* v. *District Court,* 641 P.2d 922 (Colo. 1982); *Holly* v. *Auld,* 450 So. 2d 217 (Fla. 1984); *Eubanks* v. *Ferrier,* 245 Ga. 763 (1980); *Matviuw* v. *Johnson,* 111 Ill. App. 3d 629 (1982); *Oviatt* v. *Archbishop Bergan Mercy Hosp.,* 191 Neb. 224 (1974); *Atkins* v. *Walker,* 3 Ohio App. 3d 427 (1981); *Straube* v. *Larson,* 287 Or. 357 (1979).

that the harm done to the litigant and to society by refusing to compel the disclosure of pertinent facts may sometimes be outweighed under existing conditions by benefits to society in general accruing from the preservation of a confidential relationship or from protection against official oppression. But a mere sentiment or an outgrown theory as to relative social values can no more serve as a determining factor than can a consideration of professional pride of particular callings. *If a privilege to suppress the truth is to be recognized at all, its limits should be sharply determined so as to coincide with the limits of the benefits it creates*" (emphasis in original). *Id.* at 609, quoting Professor Edmund M. Morgan, Preface to the American Law Institute's Model Code of Evidence, at 7 (1942). In sum, claims of privilege are not favored in this Commonwealth. See cases cited *supra.* Cf. *Matter of Roche,* 381 Mass. 624, 638-639 (1980) (in which some Justices expressed a willingness to consider a common law news reporter privilege).

The society's claim of privilege is not aided by the fact that the plaintiff, Robert J. Cronin, seeks only those documents pertaining to the I.P.C.'s investigation of him. The Board of Registration in Medicine has a function similar to the I.P.C. The board's investigations are confidential by statute. However, the policy of confidentiality is inapplicable to a request made by a physician under investigation for the board's investigative records and documents. See G. L. c. 112, § 5, fourth par.[10]

The society argues that the Superior Court judge erred in not balancing the public interest in peer review against the Cronins' need for the documents. While we have noted that such a balancing test is useful in determining whether a protective order should be issued to protect confidential information, see *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 384 Mass. 707, 715 n.16 (1981), we have not required trial judges to undertake such a balancing test

[10] We observe that under G. L. c. 112, § 5, fourth par., as well as G. L. c. 231, § 85N, good faith and absence of malice is a defense to the imposition of liability. This statutory construction is consistent with a requirement that discovery may be compelled to determine issues such as good faith or lack of malice. See *Herbert* v. *Lando,* 441 U.S. 153, 160 (1979).

each time a new privilege is asserted. Rather, we have relied on "sound judicial discretion and administration," *Pappas, supra* at 612, to protect confidentiality interests. In the instant case, the judge exercised his discretion to limit disclosure to the parties and their attorneys. "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times Co.* v. *Rhinehart,* 467 U.S. 20, 36 (1984).

The society, in its brief, suggests that the fact that the plaintiffs failed to set forth the specific reasons why they need the I.P.C. documents should have been explicitly taken into account by the judge in his memorandum and order denying the protective order. We look to Federal decisions interpreting the Federal Rules of Civil Procedure for guidance. See *Rollins Envtl. Servs., Inc.* v. *Superior Court,* 368 Mass. 174, 179-180 (1975). The United States Supreme Court has defined relevancy under Fed. R. Civ. P. 26 (b) (1), the parallel rule to Mass. R. Civ. P. 26 (b) (1), 365 Mass. 772 (1974), "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. See *Hickman* v. *Taylor,* 329 U.S. 495, 501 (1947). Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. *Id.* at 500-501. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer Fund, Inc.* v. *Sanders,* 437 U.S. 340, 351 (1978). "[A]bsent compelling reasons to the contrary," *Rollins Envtl. Servs., Inc., supra,* that definition of relevancy controls. Thus, the judge was well within his discretion in treating the documents as relevant without making explicit findings on this issue. Cf. 1 J. Weinstein & M. Berger, Evidence at 401-6 — 401-8 (1982).

Relying on *Barrows* v. *Bell,* 7 Gray 301, 315 (1856), the society argues that, because he is a member of the society, Dr. Cronin is bound by the I.P.C.'s policy of confidentiality. In *Barrows,* we held that a member of the medical society "voluntarily submitted himself to the government and jurisdiction of the society in his professional relations, so long as [it] acted within the scope of [its] authority." *Id.* at 315. The society's reliance on *Barrows* v. *Bell, supra,* is misplaced. The issue in *Barrows* was whether the society's publication of a true account of a member's expulsion was privileged against a libel suit by the member. There was no question that the society had jurisdiction to conduct the proceedings that led to the member's expulsion. We affirmed the society's jurisdiction to hold such proceedings, which we found to be quasi-judicial, and accordingly held that the publication, as a true report of a tribunal with jurisdiction over the subject matter in question, was privileged. *Id.* at 311-315.

While the power to discipline or expel members is inherent to the society's function and a power to which members clearly assent when they join the society, the I.P.C.'s confidentiality policy appears to have been adopted by the I.P.C. itself to "encourage referrals and to encourage cooperation by impaired physicians." The society is asking us to expand the *Barrows* holding to include the policies of "more than twenty committees," without regard to the members' actual consent to the policy, knowledge of the policy, or the impact of the policy on the members' legal rights. The society offers no case support for this proposition, and we can find none.

We conclude that the judge correctly denied the society's motion. "This does not mean, however, that courts are without power to exercise their discretion to protect [peer review committees and their members] from unnecessary harassment or frivolous inquiries." *Dow Jones & Co.* v. *Superior Court,* 364 Mass. 317, 322 (1973). Subpoenae duces tecum "are subject to supervision by the presiding judge to prevent oppressive, unnecessary, irrelevant, and other improper inquiry and investigation." *Pappas, supra* at 612. The society made no such argument in the trial court or on appeal; nevertheless, we remind

judges that the scope and timing of discovery is within their discretion, and that the "prevention of [discovery] abuse . . . is sufficient justification for the authorization of protective orders." *Seattle Times Co.* v. *Rhinehart, supra* at 35. "With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert* v. *Lando,* 441 U.S. 153, 177 (1979).

*Appeal dismissed.*