Fremont-Smith, J.
INTRODUCTION
This case is before the Court on the motion of the defendants, physicians who treated former Celtic Reggie Lewis (“Lewis”) immediately prior to his death from cardiac arrhythmia, to compel production of a report of a Commission concerning drug use among athletes at Northeastern University (“the Report”) and related documents, including notes and minutes. At the hearing, plaintiffs counsel indicated that plaintiff does not oppose defendants’ motion, on the condition that the disclosure is limited to information concerning Lewis and is disclosed only to the parties. Northeastern opposes disclosure of the Report in its *573 entirety, or alternatively seeks a protective order limiting disclosure to the parties in this case. For the following reasons, the defendants’ motion is ALLOWED, subject to the separate “Protective and Impoundment Order” of this date.
BACKGROUND
On March 18, 1995, John Curiy, Northeastern University’s President, announced the formation of a Commission, consisting of medical, legal and academic professionals, to study a number of issues relating to alleged drug use among athletes at Northeastern. Curry’s decision was prompted by conflicting statements made concerning the results of drug tests administered to the 1986-87 basketball team, of which Lewis was a member. Several individuals had reported that two members of the team tested positive for cocaine and that a larger number tested positive for marijuana.
During his announcement of the formation of the Commission, Curry stated that the Commission would report its results to him, the University and the public. In his charge to the Commission, Curry empowered the Commission to review university records, to interview witnesses and to record their statements. Curry’s charge required the Commission to submit all of its written reports to Curry and prepare a public report reflecting the “sum and substance of the Commission’s findings and recommendations.” The Commission, however, recommended that the Report be amended from its original composition to protect the privacy of individuals. A full public report was never released.
After the Commission submitted its findings and recommendations to Curry, approximately one year after its formation, Curry, in a press release, stated that the Report would remain confidential. The press release, did, however, list the Commission’s seven major findings and announced that the Commission found no evidence that Lewis had ever used drugs while attending Northeastern.
Dr. Job Fuchs served as Director of Northeastern’s Lane Health Center in 1987, and oversaw the 1987 drug testing of the basketball team. Dr. Fuchs, who is now approximately eighty-two years old, has provided inconsistent deposition testimony concerning the results of Lewis’s drug test. Dr. Fuchs, who destroyed the 1987 test results, has alternately stated that he told several individuals and the Commission that Lewis tested positive, that he does not remember what he told the Commission, and, after being played a purported tape of his testimony before the Commission by an unidentified telephone caller just before his deposition, that he told the Commission that Lewis tested negative. It suffices to say that the content of Dr. Fuchs’s testimony before the Commission is unclear.
The defendants urge this Court to order disclosure of the Report and related documents as they would be likely to shed light on Lewis’s alleged past drug use, which, they contend, bears directly on whether the defendants were fully informed of Lewis’s relevant medical history, so as to be able to correctly diagnose and treat his condition. Defendants assert that production of the Report is thus “likely to lead to the discovery of admissible evidence.” Northeastern counters that the Report should not be disclosed because Northeastern’s interest in maintaining its confidentiality is strong, and the Report’s production will not measurably benefit the defendants in view of the fact that they have already deposed those persons who testified about Lewis before the Commission. Northeastern further urges this Court to adopt a so-called “self-critical analysis” privilege and to apply it to this document.
DISCUSSION
I. Discoverable Evidence under Mass.R.Civ.P. 26(b)
Mass.R.Civ.P. 26(b)(1) broadly provides for the discovery of all information that is relevant or “appears reasonably calculated to lead to the discovery of admissible evidence,” so long as the materials sought are not privileged. Relevancy is also construed broadly, encompassing “any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.” Cronin v. Strayer, 392 Mass. 525, 534 (1984), quoting Hickman v. Taylor, 329 U.S. 495, 501 (1947). Furthermore, the conduct and scope of discovery is within the sound discretion of the trial judge. Solimene v. B. Grauel & Co., 399 Mass. 790, 799 (1987).
Defendants contend that the Report is discoverable, as it may contain evidence, or lead to the discovery of admissible evidence, concerning Lewis’s alleged past history of drug use, which defendants reasonably contend is relevant to the adequacy of their medical diagnosis and treatment of him. The report is particularly crucial, defendants say, in view of the inconsistent statements made by Dr. Fuchs as to whether he told the Commission that the decedent had tested positive for cocaine use. It may also lead, they say, to the identification of others who have knowledge thereabout. Nor does the fact that the defendants have deposed certain individuals who may have testified before the Commission mean that the Report may not contain or lead to additional relevant evidence.
Under the liberal standard for discovery in Massachusetts, the Court concludes that the Report is discoverable, unless it is privileged.
II. The Self-Critical Analysis Privilege
Under the self-critical analysis privilege recognized in some states, an organization’s internal investigations and reports remain confidential. This privilege is designed to encourage openness within the organization, thereby fostering self-improvement.
*574 Claims of privilege are not, however, favored in Massachusetts, where the principle that the public has a “ ‘right to every man’s evidence’ has been preferred, on the whole, to countervailing interests. Privileges are exceptional.” Cronin, supra, at 532-33, quoting Matter of Pappas, 358 Mass. 604, 607 (1971), aff'd. sub nom., Branzburg v. Hayes, 408 U.S. 665 (1972). Privileges are generally legislatively determined, and a new privilege is to be recognized by the Supreme Judicial Court only with great reluctance. Babets v. Sec’y of Human Serv., 403 Mass. 230, 234 (1988) (refusing to recognize an “executive privilege” for internal government documents).
In the present case, this Court cannot conclude that the asserted public good resulting from maintaining confidentiality of the Northeastern Report and related documents transcends the defendants’ interest in mounting a knowing defense to the plaintiffs claims. Considering the NCAA’s prohibitions against drug use, colleges such as Northeastern are obligated, in any event, to remain dedicated to addressing the issue of drug use by athletes, and in light of this Court’s protective order, any chilling effect on individuals’ willingness to participate in such investigations should be minimal.
It might also be noted that it is unclear whether Northeastern would have met the requirements for application of the privilege even in the states where it is recognized.
In Bredice v. Doctors Hosp., Inc., 50 F.R.D. 249 (D.D.C. 1970), aff'd, 479 F.2d 920 (D.C. Cir. 1973), the seminal case establishing the privilege, the court emphasized the importance of the expectation of confidentiality held by members of the medical review panel. Other courts which have adopted the privilege have also explicitly pronounced the requirement that all participants expected complete confidentiality. See, e.g., Peterson v. Chesapeake Ohio Ry., 112 F.R.D. 360, 363 (W.D. Mich. 1986); Wylie v. Mills, 478 A.2d 1273, 1277 (N.J. Super. 1984). In the present case, there could have been no such reasonable expectation of confidentiality. In his charge to the Commission, Curxy instructed the Commission to prepare a public report, and similarly stated in a press conference that the Commission would report to the public. Only after the Commission submitted its findings was it decided that the report would remain confidential.
This does not mean, however, that the requested protective order should not issue. As noted in Cronin, supra, at 536, “judges should not hesitate to exercise appropriate control over the discovery process,” including the “authorization of protective orders.”
ORDER
Accordingly, it is hereby ORDERED that the defendants’ motion to compel production of documents pursuant to subpoena duces tecum is ALLOWED, subject to the “Impoundment and Protective Order” issued today.