## PETITION FOR THE PROMULGATION OF RULES REGARDING THE PROTECTION OF CONFIDENTIAL NEWS SOURCES AND OTHER UNPUBLISHED INFORMATION.

Suffolk.  March 8, 1985. — June 11, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Newsman. Evidence*, Privileged communication. *Supreme Judicial Court*, Rule making.

This court, assuming without deciding that it has the power to establish by rule a qualified evidentiary privilege to protect news reporters and others from the compulsory disclosure of confidential news sources and unpublished information, determined that the exercise of that power would not be warranted by the present circumstances. [168-173]

PETITION filed in the Supreme Judicial Court for the Commonwealth on August 28, 1984.

*James C. Heigham,*for Massachusetts Newspaper Publishers Association.

*M. Robert Dushman* for The Boston Herald.

*William L. Pardee*, Assistant Attorney General (*Francis X. Bellotti*, Attorney General, with him) for the Attorney General.

*Michael J. Traft*, Assistant District Attorney for the Suffolk District (*Newman Flanagan*, District Attorney for the Suffolk District, & *Harry D. Quick, III*, Assistant District Attorney for the Middle District, with him) for Massachusetts Association of District Attorneys.

*John M. Mullen* for the President of the Massachusetts Senate.

*Robert Haydock, Jr.*, for The Globe Newspaper Company.

*John Reinstein & Marjorie Heins*, for Civil Liberties Union of Massachusetts, submitted a brief.

*Thomas J. Dougherty*, for WBZ-TV4, submitted a brief.

*Peter W. Agnes, Jr.*, for Criminal Justice Section of the Massachusetts Bar Association, submitted a memorandum.

BY THE COURT. The Governor's Press Shield Law Task Force (task force)[1] has petitioned this court to adopt rules providing for a qualified evidentiary privilege to protect news reporters and others from the forced disclosure of confidential sources and unpublished information. After the petition was filed, we invited comment and heard oral argument by interested parties on the issues raised by the petition.[2] We decide that, assuming this court has the power to establish by rule a reporter's privilege, the exercise of that power is not warranted in the present circumstances.

In April, 1983, the task force was created to study the need for a press shield law in Massachusetts. After a series of meetings, the task force concluded that such a need existed, and decided to petition this court. After the Massachusetts Bar Association (MBA) declined to endorse the petition,[3] the task force itself filed the petition on August 28, 1984. In it, this court is requested to promulgate rules establishing what amounts to a qualified reporter's privilege.

As suggested by the task force, the scope of the privilege would extend beyond the organized media to include "all private individuals . . . connected with . . . processing news or other information for dissemination to the public." The privilege would protect from compelled disclosure the identity of confidential sources and all unpublished information. Disclo-

---

[1] The members of the task force are: Professor Laurence H. Tribe (chairman); Ms. Jeanne Baker; Pamela Cross, WCVB-TV; Mr. Gerald Fitzgerald, assistant district attorney for the Bristol District; Mr. Scott Harshbarger, district attorney for the Northern District; John Henning, WBZ-TV; State Senator Patricia McGovern; William F. Plante; Carol Rissman, WBUR-FM; David Starr, publisher of The Springfield Newspapers; Kendall Wallace, managing editor of The Lowell Sun; and State Representative W. Paul White.

[2] We acknowledge the assistance provided by the following, as amici curiae: The Attorney General; The Boston Herald; William M. Bulger, the President of the Massachusetts Senate; Civil Liberties Union of Massachusetts; Criminal Justice Section of the Massachusetts Bar Association; Globe Newspaper Company; Massachusetts Association of District Attorneys; Massachusetts Newspaper Publishers Association; WBZ-TV.

[3] The Criminal Justice Section of the MBA voted to oppose the petition and filed a letter with this court expressing that opposition.

sure could be required only if the party seeking the information established both that it was necessary to prevent a violation of constitutional rights or a miscarriage of justice, and that there was no alternative, less oppressive means of obtaining the same information. No sanctions could be imposed for nondisclosure of protected information, and the same rule would apply equally in civil and criminal cases, and to other proceedings before executive, administrative, or legislative bodies. The full text of the proposed privilege to be recognized by rules of court is set forth in the margin.[4]

Supporters of the petition cite several reasons why this court should promulgate rules establishing a reporter's privilege. First, they argue that compelling reporters to divulge their confidential sources of unpublished information inhibits the free flow of information to the public, by discouraging sources

---

[4] The petition stated: "The Governor's Task Force further requests that the rules promulgated embody the following broad principles:

"a. The protection of confidential news sources and other unpublished information should extend not only to the press and media as such but also to all private individuals presently or formerly connected with the process of gathering, receiving, writing, editing, interpreting, publishing, broadcasting, or in any other way processing news or other information for dissemination to the public. Such protection should cover any person engaged independently in such activities and any person connected with or employed by newspapers, periodicals, press associations, news agencies, radio, television, or other electronic media, or any other medium of communication.

"b. The protection in question should provide a shield from criminal or civil contempt, fine, imprisonment, the striking of defenses, and all other procedural or substantive sanctions in any proceeding or investigation before any governmental body, including, but not limited to, a judicial, legislative, executive, or administrative body, or a body with power to issue subpoenas.

"c. No one protected by the principles enunciated above should be compelled to disclose the source or content of information unless the person seeking the information demonstrates that: (1) compulsion to disclose the particular information involved is necessary to the proceeding and is needed to avoid the violation of constitutional rights or the miscarriage of justice; and (2) alternative, narrower, and less oppressive means of obtaining information have been exhausted or do not exist.

"d. Publication or disclosure, in any proceeding or to the public, of any information otherwise protected by these principles should not constitute waiver of the protection concerning information not published or disclosed; nor should invocation of any otherwise available legal right or privilege constitute such waiver."

from coming forward for fear of exposure, and by interfering in the news gathering and editorial processes. Second, they contend that confusion and uncertainty have resulted from the ad hoc, case-by-case adjudicatory process of developing rules in this field. Third, they note that the expense and time consumed in responding to and opposing subpoenas to produce confidential information burdens and discourages the media from covering controversial stories. Finally, supporters of the petition point out that press shield legislation has been enacted in about half of the States, and that many State and Federal courts have adopted some form of the reporter's privilege by case law. It is argued that the balancing test envisioned by the recommended privilege would protect the free flow of information to the public, while also preserving the rights of other parties who seek information from the press. There is, however, considerable disagreement about particular aspects of the petition, even among the petition's supporters.

Opponents of the petition acknowledge that this court has the power to develop a common law reporter's privilege, but argue that establishing such a privilege by rule would violate art. 30 of the Massachusetts Declaration of Rights, providing for the separation of powers. On the same basis, they contend that this court cannot state by rule what privileges are to apply before executive, administrative, and legislative bodies without the concurrence of those other branches of government. Opponents argue alternatively that, as a matter of policy, this court should not establish a reporter's privilege by rule, even if it has the power to do so. Among the considerations relied on in support of this contention are the Legislature's repeated failure to enact such a privilege; the failure of the task force to document adequately any confusion or impediment to the free flow of information resulting from the approach now followed; the manner in which this petition was presented to the court, without support or comment by the MBA; the broad scope of the recommended privilege; and the opinion that the media are not entitled to any special privilege. The Globe Newspaper Company also opposes the petition, on the ground that a near absolute privilege is already provided by the First

Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights.

We do not address the question whether this court has the power to promulgate a rule creating a reporter's privilege. After careful consideration of the issues presented by this petition, we conclude that, even if this court does have the power to do so, it should not be exercised in the present circumstances. Instead, we reaffirm our decision to consider the gradual development of law in this area through the case-by-case adjudication of the common law process.

1. *Lack of consensus.* Chief among the reasons that we decide that rule making in this field is not appropriate is that no consensus exists. Because of this lack of agreement among lawyers, the media, and the Legislature, prudence dictates that, for the present, it is more appropriate to continue on the path of common law development.

As the petition itself notes, "the development of rules of evidence or procedure has historically begun with a proposal from the Massachusetts bar." That is not the case here. After the task force had drafted the petition, it was presented to the Bench/Bar/Press Committee of the MBA, with the hope that the committee would recommend that the MBA endorse the petition and join in its presentment to this court. After considerable debate, however, the committee voted against recommending the participation of the MBA, having found no consensus among its members. The task force also communicated with other groups, but only for the purpose of "simply touch[ing] base with them informally, rather than to get them to formally endorse the [petition]." Thus, no legal consensus has developed in support of the petition. In fact, that strong disagreement exists within the legal profession is evident from the strenuous arguments made against a rule by the Attorney General, the Massachusetts Association of District Attorneys, and the Criminal Justice Section of the MBA.

It is evident that division exists within the Legislature over whether a reporter's privilege is warranted, and if so, what that privilege should include. Literally dozens of bills have been filed in recent years, with widely varying details. None

has attracted the level of support necessary for passage. See, e.g., 1984 House Doc. No. 1101 (qualified privilege for identity of confidential source, unpublished information tending to reveal such a source, and all information obtained confidentially); 1984 House Doc. No. 1966 (absolute privilege in contempt action covering same information; not waived by publication); 1984 House Doc. No. 3516 (privilege for all confidential information, except when necessary to prosecute a felony or prevent a threat to human life; waived by publication); 1984 House Doc. No. 5180 (absolute privilege for all information learned in the course of employment). See also *Matter of Roche*, 381 Mass. 624, 635-636 n.13 (1980) (compilation of unenacted bills).

When this court declined to adopt the Proposed Massachusetts Rules of Evidence, we noted that the adoption of such rules required careful coordination with the Legislature, and that some of those rules were "subject to significant and arguably valid criticisms." Announcement Concerning the Proposed Massachusetts Rules of Evidence (SJC No. 2787, Dec. 30, 1982). Thus, we recognized the traditional involvement of the Legislature in creating such rules. In this case, the extreme diversity of opinion among courts and Legislatures in other jurisdictions as to the specifics of a reporter's privilege[5] provides an additional reason for caution in addressing such matters before we are required to do so. The statement of counsel for the task force at oral argument that it brought the petition before this court because the possibility of legislative enactment was viewed as remote is itself an additional reason for this court to avoid unnecessarily thrusting itself into such a controversial area.

In addition, the supporters of the petition do not agree on how the rule should be drafted. Only one of the media amici curiae (WBZ-TV 4) supports the petition without qualification. The Massachusetts Newspaper Publishers Association generally supports the petition, but takes no position on whether the privilege should be limited to the organized media. The Civil Liberties

---

[5] See, e.g., statutes collected in *Matter of Roche, supra* at 635 n.13.

Union of Massachusetts supports the petition, but argues that mechanical recordings of public events should not be within its scope, a position that WBZ-TV strongly opposes. The Boston Herald supports the *concept* of a rule of privilege, but suggests its own, stricter test for determining when the disclosure of information may be compelled. The Herald also contends that only organized media should be within the scope of the privilege, and notes several procedural concerns that it feels should be incorporated into a rule. The Globe Newspaper Company opposes the promulgation of a rule because it believes stronger protections are already available. Alternatively, the Globe suggests a different rule altogether, based on the reporter's privilege established in New Jersey.

Among the proponents of the privilege, there is thus considerable disagreement concerning the specifics of a reporter's privilege. Among these points of disagreement are: who and what information should be covered by the privilege; whether the privilege should apply with equal force in civil and criminal cases, and, if not, how it should differ; what "balancing test" should be used to determine whether the disclosure of otherwise privileged information can be compelled; in what circumstances the privilege is waived; whether procedural concerns should be addressed in such a rule, and, if so, which ones and how. The extent of these differences reinforces our decision not to embark on a rule making course.

*2. Advantages of common law approach.* In *Matter of Roche*, 381 Mass. 624, 639 n.17 (1980), a plurality of this court noted "the dangers inherent in generalization." Some Justices agreed that "[t]he incremental process of common law development would address the need to avoid overly broad generalizations that in some cases may result in depriving litigants of relevant evidence or inhibiting speech." *Id.* at 639. The common law approach was viewed as "an appropriately cautious initial step toward developing a set of coherent guidelines capable of governing the complex and troubling conflict between the public interest in free and informed expression and the equally compelling public interest in securing all evidence necessary to fair and accurate adjudication." *Id.* at 640. These concerns are

greatly exacerbated by the circumstances in which this petition has been presented. We remain persuaded that any protections this court might develop should be limited to actual controversies coming before us. That approach will be more likely to result in principles that are flexible enough to maintain an appropriate balance between the competing interests involved, an especially important consideration because of the presently unsettled state of the law of libel. See, e.g., *Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 985 (1984); *Tavoulareas* v. *Piro*, 759 F.2d 90 (D.C. Cir. 1985); *Pacella* v. *Milford Radio Corp.*, 18 Mass. App. Ct. 6 (1984), aff'd by an equally divided court, 394 Mass. 1051 (1985). See also Monaghan, Constitutional Fact Review, 85 Colum. L. Rev. 229, 244-246 (1985).

The common law process, by its very nature, will result in less static and dogmatic principles than those enshrined in a rule. However, we do not agree that the press, public, and lower courts have been left without guidance. For example, while this court has consistently held that there is no constitutionally based reporter's privilege under either the First Amendment or art. 16,[6] we have nevertheless held that "[s]ome protection" is provided by the First Amendment for "any person" who gathers information and prepares it for expression. *Matter of Roche, supra* at 632. See *Branzburg* v. *Hayes*, 408 U.S. 665, 707 (1972). This is consistent with the task force's recommendation that a privilege should extend "to all private individuals" engaged in news gathering and dissemination. While this court has not adopted a shield against all sanctions for failure to provide confidential information as the task force recommends, we have recognized that the availability of alternative remedies to compelled disclosure should be considered. *Matter of Roche, supra* at 633. Likewise, a judge is obliged to consider the effect of compelled disclosure on values underlying the First Amendment and art. 16. Thus, a judge has the ·

---

[6] See *Commonwealth* v. *Corsetti*, 387 Mass. 1, 4 (1982); *Matter of Roche*, 381 Mass. 624, 633 (1980); *Dow Jones & Co.* v. *Superior Court*, 364 Mass. 317, 320 (1973); *Matter of Pappas*, 358 Mass. 604, 612 (1971), aff'd sub nom. *Branzburg* v. *Hayes*, 408 U.S. 665 (1972).

authority to prevent "harassing" or the "needless disclosure of confidential relationships." *Id.* at 637. See *Dow Jones & Co. v. Superior Court*, 364 Mass. 317, 322 (1973) ("unnecessary harassment or frivolous inquiries"); *Matter of Pappas*, 358 Mass. 604, 610 (1971), aff'd sub nom. *Branzburg* v. *Hayes*, 408 U.S. 665 (1972) ("unreasonably broad, unnecessary, irrelevant, or needlessly burdensome" inquiries). Cf. *Cronin* v. *Strayer*, 392 Mass. 525, 535-536 (1984).

This court has also noted that the method of case-by-case adjudication involves a balancing between the public interest in every person's evidence and the public interest in protecting the free flow of information. *Commonwealth* v. *Corsetti*, 387 Mass. 1, 5-6 (1982). In that case, we held that "[w]here the source is disclosed and the testimony sought from the reporter concerns information already made public, the State's interest in the use of that information overrides the reporter's claim that the use of that information should be restricted." *Id.* at 6. Similarly, in *Matter of Pappas, supra* at 614 n.14, this court stated that in cases where the reporter has no personal knowledge of the events about which he is called to disclose information, it may be appropriate for the trial judge to consider the guidelines of the United States Department of Justice. As presently written, those guidelines recognize the desirability of striking "the proper balance between the public's interest in the free dissemination of ideas and information and the public's interest in effective law enforcement and the fair administration of justice." 28 C.F.R. § 50.10(a) (1984).

This court has cautioned, however, that those seeking to prevent disclosure sought by valid requests must make some showing that the asserted damage to the free flow of information is more than speculative or theoretical. *Matter of Roche, supra* at 635. *Matter of Pappas, supra* at 612. When it is clear that the claim of privilege must be denied, resort to a balancing of interests is unnecessary. *Matter of Roche, supra* at 638 n.15. For example, we have held that publication negates any privilege as to the published information. *Commonwealth* v. *Corsetti, supra* at 4-5.

Supporters of the petition, however, call our attention to decisions of lower courts that they claim have interpreted these principles inconsistently. Without intimating any view as to the correctness of those decisions, we note that appellate review was not exhausted in any of them. In this regard, we have already established the availability of expedited appellate review of contempt orders and of the discovery orders that underlie them. See *Matter of Roche, supra* at 625 n.1; *Cronin* v. *Strayer, supra* at 528-530. Furthermore, this court has also suggested the importance of the judge's explanation of his decision on the record as a necessary aid to proper appellate review in this field. See *Globe Newspaper Co.* v. *Superior Court*, 379 Mass. 846, 865 (1980). See also *Bruno & Stillman, Inc.* v. *Globe Newspaper Co.*, 633 F.2d 583, 598 (1st Cir. 1980).[7]

No substantial showing has been made that these principles are insufficient to accommodate more effectively the different and unexpected cases that may arise than any rule we could construct. We therefore decide that in light of the many drawbacks to rule making in the present circumstances, it is inappropriate for this court to promulgate a rule establishing a reporter's privilege. Consequently, we dismiss the petition.

*Petition dismissed.*

---

[7] Both of these procedural suggestions were offered as additions to a rule creating a reporter's privilege.