RICHARD J. SINNOTT vs. BOSTON RETIREMENT BOARD
& others.

Suffolk.   April 7, 1988. — June 13, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Newsman. Privacy. Evidence*, Privileged communication. *Constitutional
Law*, Freedom of speech and press. *Practice, Civil*, Discovery. *Con-
tempt*.

This court reversed a judgment of civil contempt entered in the Superior
Court, pursuant to an order of a single justice of the Appeals Court,
against a deponent, a newspaper reporter, for refusing to comply with
an order that he answer questions aimed at discovering the identities of
his confidential sources where, in an action by a former employee of
the city of Boston against the Boston retirement board and various city
officials alleging invasion of privacy in the defendants' disclosure of
certain personal information to the reporter, a Superior Court judge,
after properly balancing the plaintiff's need for the information against
the public's interest in protecting the confidential nature of the reporter's
sources, had not abused his discretion in denying the plaintiff's motions
to compel discovery and to vacate a previous protective order. [585-588]

CIVIL ACTION commenced in the Superior Court Department
on May 14, 1982.

Motions to compel discovery and for a protective order
were heard by *Thomas R. Morse, Jr.*, J., and further proceed-
ings were had in the Appeals Court before *Charlotte Anne
Perretta*, J.

A motion for contempt was heard in the Superior Court
Department by *John Paul Sullivan*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*E. Susan Garsh (Jonathan M. Albano* with her) for Charles
A. Radin.

*Regina L. Quinlan* for the plaintiff.

*Boisfeuillet Jones, Jr., Carol D. Melamed & Barbara P. Percival* of the District of Columbia, for The Washington Post, amicus curiae, submitted a brief.

*James C. Heigham,* for Massachusetts Newspaper Publishers Association, amicus curiae, submitted a brief.

*Jane E. Kirtley & Susan E. Bray* of the District of Columbia, *& James E. O'Connell, Jr.,* for Reporters Committee for Freedom of the Press, amicus curiae, submitted a brief.

LYNCH, J. This is an appeal from a judgment of civil contempt entered in the Superior Court, pursuant to an order of a single justice of the Appeals Court,[1] against a deponent, Charles A. Radin, a newspaper reporter, for refusing to comply with an order that he answer questions aimed at discovering the identities of confidential sources. We transferred the case to this court on our own motion and now reverse.

On April 5, 1982, Globe Newspaper Company published an article, authored by Radin, concerning, inter alia, the application by Richard J. Sinnott (Sinnott), a recently fired chief of the licensing division of the city of Boston, for an accidental disability pension. The article appeared in the wake of a "Globe Spotlight" report detailing alleged abuses in the awarding of pensions by the Boston Retirement Board (board). According to the article, the contents of Sinnott's accident statement, made by him as part of his application to the board, were "shared with a Globe reporter by City Hall sources." As reported in the newspaper article, Sinnott attributed his disability to the emotional impact of his attendance, in his capacity as "city censor," at two 1979 rock concerts and at a "frenzied" licensing hearing during which a participating attorney died.

Five weeks after the article appeared, Sinnott commenced this action against the board, its members, and other city officials. The complaint alleges invasion of privacy in violation of G. L. c. 214, §§ 1B and 3B (1986 ed.) (counts 1 and 2), and a count said to be based on the plaintiff's First Amendment

---

[1] We do not review the underlying order of the single justice of the Appeals Court which was an interlocutory order granted within the discretion accorded in G. L. c. 231, § 118, first par. (1986 ed.).

rights and Ninth Amendment privacy rights, in violation of 42 U.S.C. § 1983 (1982) (count 3).

On August 29, 1985, Sinnott subpoenaed Radin to attend a deposition and produce various documents, including any and all which would "identify the 'sources' referred to" in the article. Relying on (1) the First Amendment to the United States Constitution; (2) art. 16 of the Declaration of Rights of the Massachusetts Constitution; (3) Mass. R. Civ. P. 26 (c), 365 Mass. 772 (1974), and Mass. R. Civ. P. 45, as amended, 387 Mass. 1221 (1983); and (4) the common law, Radin moved to quash the subpoena. The motion was denied on July 16, 1986, without prejudice for its renewal during the course of Radin's deposition. On July 31, 1986, Radin refused to answer any questions which might lead to the identification of three confidential sources. Radin renewed his motion to quash or, in the alternative, for a protective order, and Sinnott filed a motion to compel further testimony, pursuant to Mass. R. Civ. P. 37 (a), 365 Mass. 797 (1974).

On August 8, 1986, a judge in the Superior Court granted Radin's motions on the ground, inter alia, that there had been no showing that the information sought by Sinnott was not "equally available to the plaintiff were he willing to undertake the investigative effort made by Mr. Radin."[2]

On December 5, 1986, the same Superior Court judge issued findings of fact and rulings of law on the above noted motions and denied Sinnott's motion to compel discovery. Applying the principles and considerations enunciated in *Petition for the Promulgation of Rules Regarding the Protection of Confidential News Sources & Other Unpublished Information*, 395 Mass. 164 (1985), the judge weighed Sinnott's interest in obtaining the names of the individuals who allegedly wrongfully divulged to Radin the information contained in Sinnott's pension application against Radin's and the public's interest in protecting the confidential nature of his sources. This balancing

---

[2] It can be deduced from the record that, of the fifteen individuals identified by the board in its answer to an interrogatory as having access to the plaintiff's pension application, four had not been deposed prior to the August 8, 1986, order.

was conducted as a necessary component of the analysis required under Mass. R. Civ. P. 26 (c) to "assess the competing interests of preventing 'annoyance, embarrassment, oppression, or undue burden or expense,' . . . and considerations of an efficient and just resolution of the action." *Wansong* v. *Wansong*, 395 Mass. 154, 156 (1985). Concluding that "the public interest in protecting the free flow of information," *Petition for Promulgation of Rules, supra* at 172, as demonstrated by the reforms which were in part attributable to the investigative journalism conducted by the Globe Newspaper Company, outweighed the questionable necessity[3] of the sources' names for Sinnott's case and noting the availability of alternative methods of discovery, the judge denied Sinnott's motion to compel discovery.

The motion judge thereafter denied a subsequent motion to vacate his two previous orders and to compel discovery on the grounds that Sinnott failed to present substantial reasons warranting relief from judgment, pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), and that there continued to exist alternatives to compelled disclosure.

Sinnott sought relief from a single justice of the Appeals Court, pursuant to G. L. c. 231, § 118 (1986 ed.). The single justice granted the petition to vacate the previous orders of the Superior Court and remanded the case for entry of an order requiring Radin, inter alia, to disclose his sources. In so doing, the single justice independently applied the considerations set out by *Petition for the Promulgation of Rules, supra* at 171-173,

---

[3] While the judge questioned whether Radin had standing to argue that Sinnott's complaint failed to state a claim upon which relief can be granted, he considered and rejected Sinnott's contentions that the precise identities of the sources went to the "heart of the claim." See *Dow Jones & Co.* v. *Superior Court,* 364 Mass. 317 (1973). Indeed, the judge reasoned, "[I]t is unclear in the instant case why plaintiff needs to know the precise identity of Radin's sources. Plaintiff alleges defendants violated his right to privacy by permitting the contents of his application to be released to Radin against Board policy. . . . There is no question that Radin is not a person authorized to have such access, nor is there any question that Radin did have access." Therefore, the inquiry as to the sources' identities was deemed "more of a 'needless disclosure of confidential relations' than a question that goes to the 'heart of plaintiff's case.' "

and concluded that (1) "the public disclosure of the personal information here in issue is subject to serious limitations and restrictions"; (2) " [i]n view of the nature of the plaintiff's cause of action and the allegations set out in his complaint . . . the plaintiff has shown a real need for the information"; (3) the plaintiff's "endeavors [to secure the information from alternative sources] cannot be characterized as minimal"; and (4) "it has not been shown that the 'asserted damage to the free flow of information is more than speculative or theoretical.' " In sum, the single justice's own balancing of the asserted interests led her to conclude that she could not "discern any public interest to be served by protecting the 'free flow' of information to which the public has, at best, limited and restricted access."

Pursuant to the single justice's ruling, on February 10, 1988, a Superior Court judge entered an order requiring Radin to disclose his sources. On February 18, 1988, after resuming Radin's deposition, Sinnott moved for an order holding Radin in civil contempt for failing to comply. Sinnott's motion was allowed and Radin was ordered incarcerated until he provides testimony concerning the sources for the article. That order has been stayed pending appeal.

It is apparent that the contrary rulings of the Superior Court judge who denied Sinnott's motions to compel and of the single justice of the Appeals Court are premised on divergent views of the strength of Sinnott's underlying claims for invasion of privacy. We need not, nor on this record with the case in its current posture do we think it appropriate to, resolve the various open questions involved in determining whether Sinnott's complaint states a claim under G. L. c. 214, §§ 1B or 3B. The narrow question on review in this case is whether the Superior Court judge's denials of the motions to compel and the motion to vacate those orders constituted an abuse of the "broad measure of discretion" accorded him. *Matter of Roche*, 381 Mass. 624, 638 (1980), citing *Matter of Pappas*, 358 Mass. 604, 614 n.13 (1971). "An adjudication of civil contempt against a nonparty constitutes a final judgment appealable pursuant to Mass. R. A. P. 1 (c), 365 Mass. 844 (1974)," and "[the] validity of an underlying discovery order, disobedience of which

has led to an adjudication of contempt, may be challenged on appeal from the adjudication of contempt," *Matter of Roche, supra* at 625 n.1. In these circumstances, we review the rulings of the Superior Court judge denying the motion to compel and granting a protective order. Unless that ruling constituted an abuse of discretion, there is no basis for the judgment of contempt. See *Baker* v. *F & F Inv.*, 470 F.2d 778 (2d Cir. 1972), cert. denied, 411 U.S. 966 (1973). We discern no such abuse of discretion and, therefore, reverse the adjudication of civil contempt.

It is well settled that, in supervising discovery, a presiding judge is "obliged to consider the effect that compelled discovery would have on 'the values protected by the First Amendment, [even] though [these values were] entitled to no constitutional privilege.'" *Matter of Roche, supra* at 636, quoting *Herbert* v. *Lando*, 441 U.S. 153, 180 (1979) (Powell, J., concurring). The "needless disclosure of confidential relationships," *Matter of Roche, supra* at 637, is, therefore, to be avoided. While "[a] judge ruling on discovery requests must also take into account considerations of efficiency and economy," *id.*, the critical inquiry, once there is "some showing that the asserted damage to the free flow of information is more than speculative or theoretical," *Petition for the Promulgation of Rules, supra* at 172, requires "a balancing between the public interest in every person's evidence and the public interest in protecting the free flow of information." *Id.*

The Superior Court judge was warranted in balancing Sinnott's need for the information against possible damage to the free flow of information.[4] Nor can it be concluded that the Superior Court judge's view of the appropriate balance in this case was unwarranted by the record or based on an unreasonable assessment of several areas of unsettled law. Although this court has not recognized the existence of any special status for the institutional press with regard to First Amendment or art. 16

---

[4] At his deposition, Radin testified to having three confidential sources. He would not divulge whether they were among various individuals already deposed. Contrast *Matter of Roche, supra* at 635.

interests, see *Matter of Roche*, *supra* at 631 n.9; *Commonwealth* v. *Corsetti*, 387 Mass. 1, 4 (1982), it was not improper for the judge to consider the investigative purpose of and public interest in Radin's use of confidential sources. Cf. *Von Bulow* v. *Von Bulow*, 811 F.2d 136, 142-143 (2d Cir.), cert. denied sub nom. *Reynolds* v. *Von Bulow*, 481 U.S. 1015 (1987), quoting *Baker* v. *F & F Inv.*, *supra* at 782 (explaining that the public interest in nondisclosure rested upon the concern that "the deterrent effect such disclosure is likely to have upon future 'undercover' *investigative reporting* . . . threatens freedom of the press and the public's need to be informed' ").[5] His assessment of the relative weight of these public interests cannot be said, as a matter of law, to be incorrect, especially in light of the questionable viability of Sinnott's invasion of privacy claims and the lack of a clear demonstration of reasons for a need to know the precise identity of Radin's sources. Further, he correctly considered the availability of alternative sources, and, although Sinnott's efforts to pursue other avenues were not minimal, neither can it be said that, on balance, the existence of other potential sources was insignificant.

In addition to making arguments in support of the balance reached independently by the single justice of the Appeals Court, Sinnott focuses his argument on the extensive discovery already undertaken. His central argument is that to be required to continue depositions would be "to continue a game of hare and hounds," especially where, as here, all individuals previously deposed have either denied disclosing to Radin or have refused to answer on Fifth Amendment grounds. Relying on *Matter of Roche*, *supra*, he contends further that, at the very least, Radin should be required to disclose to the extent necessary to determine whether any of the defendants perjured themselves. As to the gamesmanship argument, we need say nothing

---

[5] We stress, however, that, as noted by the judge, it is the protection for "information gathering [which] must exist if the First Amendment is to serve adequately the central purpose of facilitating intelligent decisions by self-governing people," *Matter of Roche*, *supra* at 632, rather than the evidence that, in this case, reforms actually resulted from the "Globe Spotlight" series.

more than has already been said regarding the discretion of the motion judge. With regard to the possible existence of perjury in this case, we do not view such a possibility as so likely or so central to the case as to constitute grounds for disturbing the ruling of the motion judge. We therefore reverse the judgment of contempt against Charles A. Radin and the February 10, 1988, order directing him to answer deposition questions. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*