Hinkle, J.
Mark Maremont, a news reporter not a party to this litigation, has moved under Mass.R.Civ.P. *301 26(c) and 45 to quash a subpoena served upon him by Lars Bildman, citing a common law and constitutional “privilege” for news reporters. The subpoena seeks deposition testimony and documents arising out of a cover story in the May 13, 1996 edition of Business Week magazine. Maremont researched and wrote the article. After a hearing, for the reasons discussed below, the motion to quash is DENIED, except as to certain of the documents Bildman seeks.
BACKGROUND
These consolidated cases arise out of the relationship between Astra USA, Inc. (“Astra”) and its former president, Lars Bildman. Among other things, Astra alleges in its complaint that Bildman defrauded the company and repeatedly breached his fiduciary obligations by engaging in various forms of misconduct, including sexual harassment. Bildman’s counterclaims allege, among other things, that Astra breached his employment contract and libeled him.
The Maremont article, titled “Abuse of Power,” plays an important role in this litigation. At the time of its publication, Maremont was Boston Bureau Chief for Business Week. Maremont’s article was published after a six-month investigation into “rampant sexual harassment” at Astra. The investigation involved interviews with more than 70 Astra employees.
In an introductory paragraph to his article Maremont states: “On Apr. 29, as Business Week was about to publish [its article]. . . Bildman was suspended and relieved of his responsibilities by Astra’s parent, giant Swedish drugmaker Astra AB . . . Senior Astra executives acknowledge that Business Week’s investigation sparked the abrupt action . . .”
Maremont’s article, in his counsel’s words, “broke a story of substantial public import. Among other things, it resulted in a sexual harassment lawsuit filed by the United States Equal Employment Opportunity Commission (’EEOC’).” Under the Consent Decree which ended that litigation, Astra agreed to pay $9,850,000 into a fund to compensate individual claimants. The EEOC characterized the settlement as “the largest settlement of a sexual harassment lawsuit in the agency’s history.”
DISCUSSION
Maremont argues that Massachusetts law affords journalists a qualified privilege against compelled disclosure of information gathered in the course of their reportorial work or compelled disclosure of editorial decisionmaking. This privilege, Maremont argues, applies to nonconfidential as well as confidential information. Bildman, in his opposition to Maremont’s motion, argues that news reporters enjoy no shield from discovery under Massachusetts law and that Bildman is entitled to depose Maremont and obtain the requested documents.
Massachusetts law is clear that “(n]ews reporters do not have a constitutionally based testimonial privilege that other citizens do not have . . . There is no such statutory privilege, nor is there any rule of court providing such a privilege.”[2] Matter of a John Doe Grand Jury Investigation, 410 Mass. 596, 598 (1991). Common law principles, however, afford news reporters some protection. Id.
[I]t is well settled that, in supervising discovery, a presiding judge is obliged to consider the effect that compelled discovery would have on the values protected by the First Amendment, even though these values were entitled to no constitutional privilege . . . The needless disclosure of confidential relationships . . .is, therefore, to be avoided.
Ayash v. Dana-Farber Cancer Inst., 46 Mass.App.Ct. 384, 388 (1999) (quotation marks, alterations and citations omitted). These principles also provide a judge with the authority to prevent “harassing.” Petition for the Promulgation of Rules Regarding the Protection of Confidential News Sources and Other Unpublished Information (hereafter Petitionfor Promulgation of Rules), 395 Mass. 164, 171-72 (1985). See Dow Jones & Co. v. Superior Court, 364 Mass. 317, 322 (1973) (referring to judicial power to protect news reporters from “unnecessary harassment or frivolous inquiries”). The protection these principles afford may, in effect, amount to a common law privilege. See Matter of a John Doe Grand Jury Investigation, 410 Mass. at 598.
Under these principles, those seeking to avoid disclosure must first “make some showing that the asserted damage to the free flow of information is more than speculative or theoretical.”[3] Petitionfor Promulgation of Rules, 395 Mass. at 172. The court then weighs “(a) the public interest in having every person’s evidence available against (b) the public interest in the free flow of information.” Matter of a John Doe Grand Jury Investigation, 410 Mass. at 599. These principles provide “more clearly defined protection against intrusive discovery than that provided by the discretionary supervision contemplated by [Mass.R.Civ.P. 26(c)].” Id. Availability of alternative sources is a relevant consideration. Sinnott v. Boston Retirement Bd., 402 Mass. 581, 587, cert. denied, 488 U.S. 980 (1988). The unwilling witness has the burden of showing that the subpoena should be quashed. Id. at 600 n. 1.
Neither Maremont nor Bildman refer this court to any reported Massachusetts State case applying the protection afforded news reporters to the discovery of nonconfidential information, and this court’s research has located no such case.[4] The case which comes closest is Matter of Roche, 381 Mass. 624, 626 (1980), where a reporter conducting an investigation received information from what he termed “confidential sources.” At a deposition, the reporter refused to reveal the identity of these sources but stated that all their names were on a list of 65 potential witnesses. The Court held that the case was not one where compelling the journalist to testily would reveal the identity of *302 “otherwise unidentifiable" sources. Id. at 630. It was not a matter of whether the identities would be revealed, but when and after how much effort. Thus, even though “the extension of a pledge of confidentiality may significantly aid in the process of gathering information,” because the reporter had already provided enough information to identify the sources, the nature of the asserted harm to the free flow of information was “speculative.” Id. at 632, 635. Matter of Roche is therefore significant because the degree to which discovery threatened confidentiality was an important factor in the court's decision.
Other decisions make clear the significance of confidentiality in the Court’s analysis, either in the balancing test or in the assessment of the threshold showing. See Matter of a John Doe Grand Jury Investigation, 410 Mass. at 600 (asserted damage to free flow of information more than speculative or theoretical, because reporters would not have obtained information if they had not promised anonymity to sources); Sinnott, 402 Mass. at 587 (judge appropriately considered in balancing test the investigative purpose, and public interest in use, of confidential sources).
In this case, Maremont has not shown that the protection Massachusetts law provides him requires that the subpoena be quashed in its entirety. The balancing of interests, or even the threshold showing as to the damage to free flow of information, cannot be made at this point by drawing a bright line compelling disclosure or barring inquiry. The deposition may go forward. After specific questions, if Maremont fails to answer and a motion to compel is filed, I can then reevaluate the issues raised here in proper context.
That is not to say that Bildman, in deposing Maremont, may explore without limit. For example, Bildman contends Maremont’s deposition will provide impeachment evidence. True, Bildman cannot obtain this information elsewhere. Yet, Bildman provides in his opposition brief no concrete evidence that the extensive discovery he has taken reveals any material difference in a potential trial witness’s position from that stated in the Business Week article. It should be noted that the Astra officers and employees quoted in Maremont’s article are not numerous.[5] If Bildman has contradictory information revealed through discovery, he may properly inquire at Maremont’s deposition about what these individuals told Maremont or Business Week's representatives during the extensive investigation which preceded publication of the article.
Bildman stated at the hearing on this motion that he does not seek confidential information from Maremont or the identity of .Maremont’s confidential sources. His brief, however, states that he may seek confidential information if the source is Astra USA, Astra AB or any other defendant. From my knowledge of this case, it does not seem plausible that Bildman could depose Maremont without making some inquiry into areas where an answer would inevitably reveal confidential sources. Again, absent from the record is the context of specific questions upon which to make a ruling.
Bildman also indicates he wants to question Maremont about the editorial process involved in publication of his article. Maremont argues, citing Miami Herald Publ. Co. v. Tornillo, 418 U.S. 241 (1974), that editorial decisions are protected by the First Amendment. In Miami Herald Publ., 418 U.S. at 258, the Supreme Court held: “The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and the treatment of public issues and public officialswhether fair or unfairconstitute the exercise of editorial control and judgment.” However, the First Amendment protection afforded editorial decisions in that case was a protection against government commandeering of editorial decision, not a protection against disclosure. This was made clear in Herbert v. Lando, 441 U.S. 153, 169 (1979), where the Court stated: “(A)ccording an absolute privilege to the editorial process of a media defendant in a libel case is not required, authorized, or presaged by our prior cases, and would substantially enhance the burden of proving actual malice . . .” The Court suggested that editorial discussions or exchanges have some protection from casual inquiry, e.g., to satisfy curiosity or to serve a general end such as the public interest. Id. at 174.
Maremont cites no Massachusetts State case on the issue of the protection afforded editorial discussions and this court’s research has found none. I am not satisfied, however, that the decision to publish the article or the timing of its publication has any relevance to the claims of Astra or Bildman or to Bildman’s defenses. Needed again is some context.
I turn now to the four categories of documents Bildman seeks.[6] The first two categories need not be produced at this time.[7] The third and fourth categories seek evidence of communication to or from Astra, its officers, directors, employees and/or agents. No ground exists for Maremont withholding these documents.
ORDER
For the foregoing reasons, Maremont’s motion to quash his subpoena is DENIED except as to production of: (i) all documents from 1995 through 1996 concerning the investigation of allegations of sexual harassment and other inappropriate conduct at Astra USA; and (ii) all documents concerning meetings with officers, directors, employers, and/or agents of Astra USA.

 Federal courts afford a qualified privilege to journalists, based either on the First Amendment or on Federal common law. E.g., Gonzales v. National Broadcasting Co., 194 F.3d 29, 35 n.6 (2d Cir. 1999); Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 595-96 (1st Cir. 1980). In treating *303 the motion before me, I follow the holdings of the Commonwealth’s appellate courts.

 “Some showing” means something more than a “bald allegation" but not a “burdensome showing.” Ayash, 46 Mass.App.Ct. at 389-90.

 Federal courts have extended the qualified privilege that exists under Federal law to nonconfidential information. E.g., Shoen v. Shoen, 48 F.3d 412, 415-16 (9th Cir. 1995); United States v. LaRouche Campaign, 841 F.2d 1176, 1181-82 (1st Cir. 1988). I decline to extend the protection afforded journalists in Massachusetts in a manner inconsistent with Massachusetts precedent. As I note below, nonconfidentiality of information is a factor of importance to consider.

 Each person identified in the Business Week article is a likely trial witness.

 The subpoena requests;
All documents, whether stored in electronic format or paper format, concerning:
All documents for the time period 1995 through 1996 concerning the investigation of allegations of sexual harassment and other inappropriate conduct at Astra USA;
All documents concerning meetings with officers, directors, employees, and/or agents of Astra USA;
All documents sent to Astra USA (its officers, directors, employees, and/or agents) by you concerning the Business Week investigation; and
All documents from Astra USA (its officers, directors, employees, and/or agents) or Astra AB (its officers, directors, employees, and/or agents) to you or Business Week concerning the Business Week investigation.

 After the deposition, if a motion to compel is filed, this ruling may warrant re-examination.