COMMONWEALTH vs. ROXBURY CHARTER HIGH PUBLIC
SCHOOL.

No. 06-P-733.

Suffolk. February 6, 2007. - May 14, 2007.

Present: KAFKER, GREEN, & SIKORA, JJ.

*Board of Education. Education,* Charter school. *Practice, Civil,* Judicial
discretion. *Administrative Law,* Record, Substantial evidence.

A Superior Court judge erred in allowing the defendant school's motion to
supplement the administrative record in an action to enforce a decision of
the Board of Education revoking the defendant school's charter, where
there was no legal basis under G. L. c. 30A, § 14(6), to include the proposed
evidence, which was immaterial to the issues in the case. [52-55]

Substantial evidence supported the decision of the Board of Education revok-
ing the defendant school's charter, where enrollment was declining and
was far below projected levels incorporated into the charter itself, and
where the school failed to develop any individual learning plans as described
in its charter, was not handicapped accessible, and, given its precarious
financial condition, had little prospect of improving. [55-58]

CIVIL ACTION commenced in the Superior Court Department on
September 22, 2005.

The case was heard by *Geraldine S. Hines,* J., on motions for
leave to present additional evidence and for judgment on the
pleadings.

*Rory FitzPatrick (William G. Potter & Sharleen Joy Davis*
with him) for the defendant.

*Jane L. Willoughby,* Assistant Attorney General, for the
Commonwealth.

GREEN, J. The defendant charter school (school) appeals from a
judgment of the Superior Court, which affirmed a decision of the
Board of Education (board) revoking the school's charter. We
conclude that the board's decision was supported by substantial
evidence, and that the school's motion to supplement the admini-
strative record, under G. L. c. 30A, § 14(6), was properly denied.
We accordingly affirm the judgment.

*Background.* On June 5, 2002, the board granted the school a charter as a Commonwealth charter school under G. L. c. 71, § 89(*a*).[1] After a planning year, the school opened its doors in the fall of 2003 to sixty-nine entering ninth grade students. In the fall of 2004, enrollment increased to 104 students with a second entering class of ninth graders. However, in both instances the school's enrollment was significantly below the levels projected in its charter application. By the beginning of the 2004-2005 academic year, the board had already developed serious concerns about the school's financial viability, among other issues.

In early October, 2004, seven employees of the Department of Education (department) conducted a coordinated program review of the school.[2] In November, 2004, the department conducted a site visit, extending over two days, for the purpose of assessing the school's programs and operations. On December 14, 2004, the Commissioner of Education recommended to the board, in writing, that the board revoke the school's charter, effective as of December 30, 2004. Reports of both the October coordinated program review and the November site visit were filed with the board before its vote, on December 21, 2004, to revoke the school's charter, effective as of June 30, 2005 (the end of that academic year).

The board's vote was subject to the school's right to request an administrative hearing, and the school requested such a hearing. The administrative hearing occurred over seven days between June 13 and June 30, 2005.[3] In a forty-one page decision issued on August 8, 2005, the hearing officer designated by the board concluded that the board had cause to revoke the school's charter.

---

[1]"There are two types of charter schools: Commonwealth charter schools and Horace Mann charter schools." *School Comm. of Hudson* v. *Board of Educ.*, 448 Mass. 565, 566 n.3 (2007). See *id.* at 567-573, for a discussion of the differences between the two, as well as the general statutory framework.

[2]As explained by the hearing officer, a coordinated program review is a regular part of the department's monitoring of a charter school, and is designed to determine whether the school is operating in compliance with Federal and State requirements.

[3]The school additionally asked the board to reconsider its revocation vote at its meeting on May 24, 2005. The board denied reconsideration.

The hearing officer's conclusion rested on four principal grounds. First, the hearing officer cited the school's failure to meet its enrollment projections, and the fact that enrollment had declined rather than improved over time.[4] Second, he noted serious difficulties in the school's financial condition.[5] Third, he observed that the school had failed to implement programs required by its charter or State and Federal law.[6] Finally, he cited significant shortcomings in the school's governance and management structure.[7]

At its meeting on September 14, 2005, the board adopted the hearing officer's decision, and again voted to revoke the school's charter. The board further directed the school to close, effective on Friday, September 16, 2005. The school continued its operations, despite the board's order, and the Commonwealth commenced an action in the Superior Court, pursuant to G. L. c. 30A, § 14, seeking to enforce its revocation decision. The school moved to expand the administrative record, pursuant to G. L. c. 30A, § 14(6), and the judge allowed the motion. However, on

---

[4]The school's first-year enrollment was sixty-nine students compared to a projected enrollment (in the charter application) of one hundred. The school's second-year enrollment was 104 students compared to a projected enrollment of 175. The school reported pre-enrollment of 140 students for the upcoming 2005-2006 academic year (as compared to a projection in its charter application of 250 students). The hearing officer discounted that pre-enrollment figure, based on significant fall-off between pre-enrollment reports and actual matriculation in each of the preceding two years. He further noted that even the pre-enrollment figure for the third year fell below the enrollment level originally projected for the second year of operation.

[5]The hearing officer cited in particular a $263,780 operating deficit and budget-driven teacher layoffs, along with the school's decision to close its doors early in June, 2005, for cost-cutting reasons.

[6]The school did not implement so-called "individual learning plans" for any of its students, even though such plans constituted a core element of the school's instructional program as described in its charter application. In addition, the school was not handicapped accessible, and the school failed to respond to the department's written request for a plan to address the accessibility problem. The school also failed to satisfy the conditions required to receive special education funding for its first year of operation.

[7]The school adopted an unwieldy, and costly, dual head of school model, with both a chief executive officer and a director hired at high salaries. Personnel turnover was high: only one teacher returned after the first year, and critical finance personnel were either terminated or resigned. The hearing officer further noted a lack of adequate oversight by the school's trustees, and a persistent failure by the trustees to respond to evident problems.

the Commonwealth's petition for interlocutory review under G. L. c. 231, § 118, first par., a single justice of this court vacated the order.[8] Thereafter, following a hearing, a judge of the Superior Court concluded that the board's decision was supported by substantial evidence and that the board acted within its authority in revoking the school's charter. This appeal followed.[9]

*Denial of school's motion to supplement the administrative record.* We begin by addressing the school's claim that it was improperly prevented from submitting additional material to supplement the administrative record, pursuant to G. L. c. 30A, § 14(6). The question is before us in a somewhat unusual posture, in that (as we have observed) the Superior Court judge initially allowed the school's motion, but her order was vacated by a single justice of this court. The school filed a notice of appeal from the order of the single justice, but thereafter did not docket the appeal. The Commonwealth argues that the school's failure to pursue an appeal from the order of the single justice operated to waive any claim arising from the denial of its motion to supplement the administrative record. To the contrary, however, the orders of both the Superior Court judge and the single justice concerning the request to supplement the administrative record were interlocutory in nature, and therefore not appealable. See, e.g., *Manfrates* v. *Lawrence Plaza Ltd. Partnership*, 41 Mass. App. Ct. 409, 412 (1996). Because the order of the single justice was not appealable, the school's failure to perfect or pursue an appeal from that order could not have waived anything.[10]

That the school did not waive its right to review of its request

---

[8]In addition to vacating the order allowing the school to supplement the administrative record, the single justice (i) vacated a stay imposed by the Superior Court judge, pending remand to the board; and (ii) affirmed the Superior Court's denial of the Commonwealth's motion for a preliminary injunction, directing the school to cease operations. Neither party has raised any issue in the present appeal concerning the propriety of those rulings.

[9]The school continued to operate during the pendency of the Superior Court action, pursuant to an order entered by a single justice of this court on October 31, 2005. Though that authority expired upon the December 20, 2005, decision of the Superior Court affirming the order of revocation, the school thereafter continued to operate through the remainder of the 2005-2006 academic year.

[10]We note that so much of the Superior Court judge's order as denied the Commonwealth's application for a preliminary injunction was eligible for ap-

to supplement the administrative record does not wholly resolve the posture of the question before us, however. The order of the single justice is not before us. See *Manfrates* v. *Lawrence Plaza Ltd. Partnership, supra* at 412. Compare *Greenberg* v. *Greenberg*, 10 Mass. App. Ct. 827, 828 (1980). Instead, we review the order of the Superior Court judge (who allowed the school's motion to expand the record) for abuse of discretion. See *Sinnott* v. *Boston Retirement Bd.*, 402 Mass. 581, 585-586, cert. denied sub nom. *Sinnott* v. *Radin*, 488 U.S. 980 (1988); *Manfrates* v. *Lawrence Plaza Ltd. Partnership, supra* at 413.[11]

Some formulations of the abuse of discretion standard suggest that, in order to disturb the trial court's order, a reviewing court would need "to come close to finding that the trial court had taken leave of its senses." *Long* v. *Wickett*, 50 Mass. App. Ct. 380, 386 n.8 (2000), quoting from Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 763 (1982). See *Massachusetts Assn. of Minority Law Enforcement Officers* v. *Abban*, 434 Mass. 256, 266 (2001), quoting from *Long* v. *George*, 296 Mass. 574, 579 (1937) (abuse of discretion defined as action "that no conscientious judge, acting intelligently, could honestly have taken"). Such a formulation is unnecessarily pejorative in the circumstances of the present case, however, since abuse of discretion also occurs where judicial action exceeds the legal framework under which the judge is authorized to act. See *Long* v. *Wickett, supra* at 386-387 n.8. It is from the latter perspective that we (consistent with the view expressed by the single justice) conclude that the Superior Court judge erred in allowing the school's motion to supplement the record.

General Laws c. 30A, § 14(6) provides:

"If application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of

peal to a panel of this court, pursuant to G. L. c. 231, § 118, second par. See *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 610-613 (1980). However, even in the case of orders involving preliminary injunctions, the failure to seek interlocutory review does not prejudice a party's ability to seek review by appeal following entry of final judgment. *Id.* at 613-614.

[11]Compare *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 389-390 (2004), for a discussion of the circumstance in which an order of the single justice modifying an interlocutory trial court order is itself before the court, pursuant to a report by the single justice.

the court that the additional evidence is material to the is-
sues in the case, and that there was good reason for failure
to present it in the proceeding before the agency, the court
may order that the additional evidence be taken before the
agency upon such conditions as the court deems proper.
The agency may modify its findings and decision by
reason of such additional evidence and shall file with the
reviewing court, to become part of the record, the ad-
ditional evidence, together with any modified or new find-
ings or decision."

By its motion, the school sought to introduce additional mate-
rial of three types: (i) its audited financial statement for fiscal
year 2005, showing that the school completed the year with a
small surplus rather than a deficit; (ii) changes in the composi-
tion of the school's board of trustees, which the school argued
would address the shortcomings in governance cited by the
hearing officer; and (iii) Massachusetts Comprehensive Assess-
ment System (MCAS) test results, showing that the school's
students outperformed their peers at other Boston public high
schools. The proposed evidence was immaterial to the issues in
the case, so that there was no basis under § 14(6) to expand the
record to include it.[12]

As a threshold matter, we note that the school's audited
financial statement was not even prepared at the time it filed its
motion, and was not completed for several months thereafter.[13]
Moreover, it is immaterial that the statement, when completed,
showed that the school completed the fiscal year with a small
surplus, because the hearing officer expressly anticipated that
possibility in his decision, and stated his view that such a result
would not alter his conclusions concerning the school's prospec-
tive financial viability.

The school's reliance on changes in the composition of its
board, as addressing the cited shortcomings in its governance
structure, is puzzling, since the hearing officer had before him

[12]Because we conclude that the evidence was immaterial, we need not
consider whether there was good reason for the school's failure to present it in
the proceeding before the hearing officer. Compare *Massachusetts Assn. of
Minority Law Enforcement Officers* v. *Abban*, 434 Mass. at 266-267.

[13]The school filed its motion on September 28, 2005. The school's audited
financial statement was completed on December 16, 2005.

at the hearing, and acknowledged in his findings, the fact that three new trustees had already joined the school's board. Moreover, the school invoked the same changes of trustees in its unsuccessful motion for reconsideration directed to the board in May, 2005. Because the changes in the composition of the school's board of trustees were before both the hearing officer and the board before the board's revocation vote, expansion of the administrative record to include such information would add nothing.

Lastly, MCAS test results are immaterial to the issues in the case, because student academic performance formed no part of the hearing officer's conclusion that there was cause to revoke the school's charter.[14]

There was no legal basis under G. L. c. 30A, § 14(6), to warrant presentation of the additional evidence proposed by the school, and the Superior Court judge accordingly erred in allowing the school's motion.[15]

*Substantial evidence supporting the board's decision.* In an appeal under G. L. c. 30A, § 14, we review the board's decision to see whether it is supported by substantial evidence. General Laws c. 30A, § 1(6), defines substantial evidence as "such evidence as a reasonable mind might accept as adequate to support a conclusion." The test takes into account the entire administrative record, including both the evidence supporting the decision and whatever fairly detracts from its weight. See *Covell* v. *Department of Social Servs.*, 439 Mass. 766, 783 (2003). Nonetheless, "[i]t is a standard of review 'highly deferential to the agency,' which requires . . . according 'due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary author-

---

[14]We do not intimate that student academic performance is immaterial to an assessment of the quality or performance of a charter school. However, since academic performance was not among the failures supporting the board's revocation decision, evidence concerning student test scores does not respond to, or address, the reasons for that decision.

[15]Because our conclusion that the Superior Court judge erred in allowing the school's motion is consistent with that of the single justice and, accordingly, with the progress of the case in the Superior Court following the order of the single justice, we need not disturb the resulting judgment. Compare *Sinnott* v. *Boston Retirement Bd.*, 402 Mass. at 586, and *Manfrates* v. *Lawrence Plaza Ltd. Partnership*, 41 Mass. App. Ct. at 415.

ity conferred upon it.' " *Friends & Fishers of the Edgartown Great Pond, Inc.* vs. *Department of Envtl. Protection,* 446 Mass. 830, 836 (2006), quoting from *Hotchkiss* v. *State Racing Commn.,* 45 Mass. App. Ct. 684, 695-696 (1998). See generally *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981), and cases cited.

Under G. L. c. 71, § 89(*kk*), "[t]he board may revoke a school's charter if the school has not fulfilled any conditions imposed by the board in connection with the grant of the charter or the school has violated any provision of its charter." The board has promulgated regulations further defining cause for charter revocation or suspension. See 603 Code Mass. Regs. § 1.13(1) (2004).[16]

The projected enrollment levels represented in the school's charter application were incorporated into the charter itself, and the substantial shortfall between the school's actual enrollment and the projections supporting its charter application accordingly constituted a violation of the school's charter. Moreover, as the hearing officer observed, the trend in enrollment was negative, and by the beginning of the second year of operations

---

[16]Title 603 Code Mass. Regs. § 1.13(1) provides:

"The Board of Education may suspend or revoke (hereinafter, 'revoke') a charter for cause, including but not limited to:

"(a) a material misrepresentation in the application for approval of the charter;

"(b) failure to comply substantially with the terms of the charter, with any of the applicable provisions of M. G. L. c. 71, or with any other applicable law or regulation;

"(c) financial insolvency;

"(d) misappropriation, conversion, mismanagement, or illegal withholding of funds or refusal to pay any funds that belong to any person otherwise entitled thereto and that have been entrusted to the charter school or its administrators in their fiduciary capacities;

"(e) fraud or gross mismanagement on the part of charter school administrators or Board of Trustees;

"(f) criminal convictions on the part of the charter school or its Board of Trustees; or

"(g) failure to fulfill any conditions imposed by the Board of Education in connection with the grant of a charter."

not only was enrollment far below projected levels, but there was no waiting list of students seeking admission.[17]

The school also failed to develop any individual learning plans (ILP), a centerpiece of the school's program as described in its charter.[18] At the administrative hearing, the school submitted no ILPs in evidence. Moreover, the school's executive director testified at the hearing that he saw no evidence of any "learning contract," which was to have comprised one-half of the ILP program. The hearing officer further found that the school did not provide teacher training in the Adaptive Learning Environments Model (ALEM) method,[19] or the development or use of ILPs.

The school also was not handicapped accessible, in violation of Federal and State accessibility laws, and G. L. c. 71, § 89(l).[20] Moreover, the school failed to qualify for special education funding in its first year, it lacked qualified special education teachers, and its special education director was not certified.

The shortfall in student enrollment contributed directly to the school's precarious financial condition. However, fiscal mismanagement exacerbated an already difficult situation. Though the hearing officer did not conclude that the school was financially insolvent, or that the governance failures rose to "gross mismanagement," as set forth in 603 Code Mass. Regs.

---

[17]The school was one of only five charter schools in Massachusetts without a waiting list.

[18]Specifically, the charter application stated as follows:

> "Every student at [the school] will have an ILP. This document will be divided into two components. Part I will be used to capture diagnostic information about each student, and teachers will use this to write prescriptive information for instructional purposes. Part II will be a 'Learning Contract' that will be used to foster independent learning. In this section teachers will make assignments (homework; projects; writing assignments; readings; etc) that will be tied into the student's ability level. These assignments will become part of a student's 'portfolio'."

[19]As described in the charter application, the ALEM method is based on the premise that students learn in different ways and at varying rates. ALEM accommodates these differences through "adaptive instruction," using a variety of instructional methods tailored to the needs of individual students.

[20]The failure to provide handicapped access also violated a "statement of assurances" submitted with the school's charter application.

§ 1.13(1)(c) or (e), he rightly observed that the school held little prospect of improving or addressing the shortcomings earlier noted without the stability furnished by a sound financial condition and capable management.

*Conclusion.* The board's decision to revoke the school's charter was supported by substantial evidence. The judgment of the Superior Court is accordingly affirmed.[21]

*So ordered.*

---

[21]We decline the school's request that we vacate the board's revocation decision on the ground that probation would have been a more appropriate administrative response. The school concedes that it did not raise that claim in the Superior Court, and it is accordingly waived. See *M. H. Gordon & Sons, Inc.* v. *Alcoholic Bevs. Control Commn.*, 386 Mass. 64, 67 (1982), and cases cited. The case does not fall within the narrow range of exceptions described in *Albert* v. *Municipal Ct. of Boston*, 388 Mass. 491, 494 (1983). Moreover, the question whether to revoke a school's charter is committed to the board's discretion by both statute and regulation, see G. L. c. 71, § 89(*kk*); 603 Code Mass. Regs. § 1.13(4), and we would be loathe to disturb the board's election among available sanctions even if the question were properly before us. See *Levy* v. *Board of Registration & Discipline in Med.*, 378 Mass. 519, 528-529 (1979).