Fecteau, J.
The plaintiff has brought an action against the defendant that alleges defamation. The plaintiffs complaint is in one count and alleges that he was informed by the police chief of the Town of Lancaster, who is not a party to this case, that one of the reasons for his refusal to sign a certificate of good character upon which the decision not to reinstate his peddler’s license was apparently based was a statement allegedly made to him by the defendant, then a member of the police department of the City of Leominster, that referred to conduct of the plaintiff occurring in the business operation of the plaintiffs canteen truck that involved allegations of violation of the Controlled Substances Act, as well as the chiefs own experience with the plaintiff in connection with the execution of a search warrant in 1986.
The plaintiff conducted a deposition of a reporter from the Worcester Telegram and. Gazette (neither of whom also are parties to this litigation), who had written an article[1] published in May 1999, concerning the plaintiffs application for a reinstatement of his license and that recounted some history of interactions between the police chief and the plaintiff as it relates to his application. The plaintiff apparently lost his license in 1988 when it was suspended apparently as a result of a drug arrest. After the criminal case was dismissed, the plaintiff sued the town for reinstatement of his license on a number of occasions, lastly in 1997.
The newspaper article was apparently prompted by an April 1999 decision of this court, Hillman, J., in connection with the 1997 case, that ordered the police chief to sign the certificate of good character, and by the police chiefs stated intention to appeal the order [10 Mass. L. Rptr. 162). The article repeated the words that had been expressed by the police chief in answers to interrogatories to the plaintiff that had been filed in connection with the 1997 case, but the article did not attribute any source of that same information other than court documents from the series of prior cases that had been brought by the plaintiff to force the police chief to certify his good character as a prerequisite to obtaining the license, and possibly Chief Lamb. During the deposition of the reporter, the plaintiff, through counsel, attempted to learn from the reporter if she had sources other than the police chief and the court documents referenced in her article. Counsel for the deponent instructed her not to answer and cited the need of the reporter to maintain the confidentiality of her sources so as to continue an unrestricted flow of information. This motion, to compel the deponent/reporter to answer questions that she refused to answer, on the advice of counsel, followed.
The plaintiff has made no showing of the need for the deposition and an inability to obtain the substantial equivalent from other methods. The plaintiff has brought suit only against the defendant, now no longer a member of the Leominster police; there is no indication that he has ever been deposed. Second, the plaintiff states that he first became aware of the Lancaster police chiefs reason for refusal to sign his certificate of good character was when he saw Chief Lamb’s answers to interrogatories in the 1997 action the plaintiff had brought against the town for reinstatement of his license and for an order that required the police chief to sign the certificate. The Lancaster police chief has been deposed[2] and he explained how he came to speak with Braun. Third, the article does not cite or allude to any source of information other than the police chief through court documents likely generated at the plaintiffs request.
While the complaint in the case at bar was filed after publication of the article in question, the complaint herein expressly relates to the defendant’s statements to Chief Lamb that were made a part of his interrogatory answers in 1998, predating the article’s publication. It thus appears that there is nothing that the plaintiff can gain to further his claim against the defendant herein from a deposition of the reporter, with the possible exception that a “fishing expedition” might uncover the possibility that the defendant had repeated the alleged defamatory words to others. The plaintiff argues that his intent was to isolate Braun’s words as the sole source to Lamb (in which the reporter would be of no assistance) and to uncover whether there was any other source of evidence to support a defense of truth. However, the plaintiff has not demonstrated an exhaustion of the opportunity to obtain such information from Lamb and Braun. Therefore, and upon consideration of the “balancing between the public interest in every person’s evidence and the public interest in protecting the free flow of information” (see Petition for the Promulgation of Rules, 395 Mass. 164, 172 (1985)), I find that the plaintiff has failed to show a substantial need for the reporter’s information and that he cannot obtain through other means the substantial equivalent of the information sought from the reporter.
*588 Consequently, and for the foregoing reasons, the plaintiffs motion to compel deposition testimony is denied.

Neither party to the motion attached a copy of the newspaper article but a copy was attached as part of the Rule 56 record in an earlier motion for summary judgment.

Recourse is again to the court file in which the plaintiffs motion to compel deposition testimony of Kurt Fliegauf (paper no. 5) attached Lamb’s full deposition transcript.